DAVID M. MATTHEWS v. NEW ORLEANS & NORTHEASTERN
RAILROAD COMPANY.

[47 South. 657.]

RAILROADS. *Master and servant. 'Injury to servant. Rules. Violation*
*of. Coupling cars. Contributory negligence. Abandonment of*
*rule. Unblocked frogs. Assumption of risks. Peremptory in-*
*struction. Questions for jury.*

In a suit against a railroad company for the alleged wrongful death
of a brakeman, who, in violation of a rule of the company for-
bidding employes from going between moving cars, went between
them, endeavoring to uncouple one of them, and was run over
and killed, his foot having become fastened in an unblocked rail-
way frog, a peremptory instruction for the defendant should not
be given, evidence being offered that the rule had been commonly
disregarded and deceased had never been required to read it, as
the rule itself provided should be done, since three questions of
fact were presented for determination by a jury:—

(a) Whether the decedent had knowledge of the rule;

(b) Whether the rule had been abandoned by the company; and

(c) Whether the decedent assumed the risks from unblocked frogs
over which he had to pass in the discharge of his duties.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Matthews, appellant, was plaintiff in the court below; the
railroad company, appellee, was defendant there.

The suit was for damages for the alleged wrongful death of
William Matthews, a brakeman in the employ of the defendant
railroad company, who was killed while engaged in setting out
certain cars of a freight train which were being moved onto a
side track at Carriere, Miss. There were no eyewitnesses to the
accident, deceased was found under the train, too nearly dead to
make any statement as to how his injuries were received, and
soon died. The testimony and surrounding circumstances led
to the conclusion that he must have gone between the cars in or-
der to uncouple them. Plaintiff claims that the appliances were

so defective that this was necessary, as the lever would not withdraw the coupling pin, especially when the cars were on an incline and taut, and that the frog at which the accident occurred was unblocked, so that deceased's foot was caught in it and he was thrown under the moving cars. The defendant pleaded contributory negligence, setting up a rule of the railroad company forbidding employees going between moving cars. Plaintiff offered evidence showing or tending to show that the rule was never brought to the knowledge of deceased, and had, in fact, been abandoned. The facts are further stated in the opinion of the court.

*Williamson & Gilbert,* for appellant.

In granting the peremptory instruction for the defendant the court below deprived the plaintiff of the benefit of the *prima facie* statute. Code 1906, § 1985; *Railroad Co. v. Brooks,* 85 Miss. 269; 38 South. 40; *Railroad Co. v. Landrum,* 89 Miss. 399, 42 South. 675; *Railroad Co. v. Hicks,* 91 Miss. 273, 46 South. 360.

There were no eye witnesses in the instant case to show how deceased got under the cars, no evidence as to what he was doing, no evidence as to "how the injury occurred." The defendant denied the facts and circumstances adduced by the plaintiffs in an effort to show how the injury occurred; the testimony of the defendant was that the train, track and appliances were in the usual perfect condition, and state of repairs. The defendant's witnesses testified that no cars were uncoupled, that everything was in good condition, but wholly failed to offer even an exculpatory conjecture in its defense. Yet, with this denial of plaintiff's evidence on every vital point, and the hopeless conflict of the evidence, the absence of eye witnesses, and the total failure of the defendants to adduce exculpatory proof, the court gave the peremptory instruction. As in the *Brooks* and *Landrum cases,* there was a conflict of evidence and the court held that the province of the jury was to settle those sorts of conflicts.

Under the *Brooks* and *Landrum* decisions, the first unshirk-
able duty imposed upon the railroad company is to show "how
the injury occurred." What was Matthews doing when he got
under the cars? What were Brooks and Landrum doing when
they were run over and mangled and killed? Argus-eyed em-
ployees may be exercising their usual blameless care, the un-
speakable dead may have, as usual, under the report of railroad
witnesses, flung ages of instinct of self-preservation to the wind,
yet, unless the railroad company shows what he was doing, how
the injury occurred, it must, under a wise law, submit to a ver-
dict of the jury.

In the *Hicks case* every argument against applying the *prima
facie* statute for the benefit of employees has been silenced by
that masterful opinion. It gave to employees the benefit of the
presumption and gave to the statute a broad and liberal inter-
pretation. Criticising the former decisions interpreting this
statute the court say: "It should have been interpreted precisely
as if it had been written thus: 'Proof of injury inflicted by
the running of locomotives or cars of such company shall be
*prima facie* evidence of liability on the part of the company.'
That was plainly the thought and purpose dominating the stat-
ute, and that purpose should have been given effect, and the
awkwardness of the legislative language disregarded."

In this case the railroad company made no effort to show what
Matthews was doing at the time of his death, then how can it
escape the presumption? It wholly failed to meet the first con-
dition of the two-fold burden, then there can be no exoneration
because that condition is pre-essential. The railroad company
cannot argue that the plaintiff's testimony tended to show or did
show how the accident occurred because the railroad company
by its testimony put the plaintiff's testimony in sharp issue by
denying and seeking to impeach it. It cannot ask that its own
testimony be disbelieved and also that the plaintiff's be held
false and unbelievable.

There is yet another presumption of law that required this

case to be submitted to the jury. In the case of *Adams v. Bunker Hill & Sullivan Mining Company,* 11 L. R. A. (N. S.), 844, is found the following rule: "In an action against the master for damages caused by death of the servant as a result of the master's negligence, the presumptions which arise in favor of the instinct of self-preservation and the known disposition of men to avoid injury and personal harm to themselves, constitute a *prima facie* inference that the servant was, at the time in the exercise of ordinary care, and was himself free from contributory negligence. In case where the injury complained of resulted in the death of the injured person, the law presumes that such person exercised the measure of care which it was his duty to exercise."

This presumption arises, of course, only where there were no eye witnesses as to how the injury occurred. We call the court's special attention to this case and the notes thereto. This is the law in Mississippi, as we understand it. The burden of proving contributory negligence is upon the defendant.

Under a well settled rule the evidence and all legitimate inferences and deductions therefrom in favor of the appellant, in a case where a peremptory instruction is granted by the trial court, are taken as true. Then in this case there were defective coupling and uncoupling apparatus and an unblocked frog. The use of these defective appliances and ways under unassailable authorities was negligence on the part of the railroad. It was a question for the jury as to whether decedent was injured by using them, just as it was a question for the jury as to whether the train of the railroad killed Landrum. It was then up to the defendant to show his contributory negligence, and, further, to overcome the presumption of due care by competent evidence. The misfortune of not having an eye-witness there, cannot be visited upon the plaintiff. If the railroad's conductor had been there assisting this boy in his hazardous business, rendered doubly perilous by worthless appliances, instead of being off at some other place, leaving the deceased to do this work alone

on those sharp curves, it would have had some one who could have told how this injury occurred. Under the pleadings, defendant promised to prove that deceased went in between moving cars in violation of a rule of the railroad, yet the proof denied it; and, further, it failed to show that deceased had knowledge of the rule. We have found no case where this presumption of due care was overcome by any other presumption arising from a conjecture that a rule had been violated; the presumption of due care does not carry the self-destroying presumption of contributory negligence.

As stated above, this presumption only arises where some negligence is shown on the part of the railroad company, and where there are no credible eye-witnesses to the accident. We will not argue the self-evident proposition that the defective appliances created a *prima facie* case of negligence on the part of the company. Just here we desire to invoke the aid of Section 193 of the constitution in behalf of this presumption. We contend that even at common law, the presumption of knowledge of defective appliances would not attach to overcome the presumption of due care in their use, but a discussion of this is unnecessary. Section 193 provides among other things: "Knowledge by any employee injured of the defective or unsafe character or condition of any machinery, ways, or appliances shall be no defense to an action for injury caused thereby, except," etc.

So in this case we might admit that deceased had actual knowledge of the unblocked frog and the other defects and in no wise disturb the presumption.

The failure to block the frog was a positive violation of the duty of the master to maintain a safe roadway. This negligence resulted in the death of deceased. It was then incumbent upon the master to show the contributory negligence of the deceased in reference to the injury. This the railroad company did not even undertake to do, but denied that the frog was unblocked. It was content with the issue of fact. Under the pleading it simply became a question of whether the frog was

blocked. The railroad company made no effort to show what deceased was doing at the time he got in the frog. The rail-road company adduced no proof of anything he was doing after he flagged the engineer to back up. The plaintiff's testimony was that he was injured on account of this defective road-way. Under the *Bussey case* in 82 Miss. 616, 35 South. 166, it then became a question for the jury. It will be noticed that the testimony in the *Bussey case* did not explain what deceased was doing at the time of the injury; the last time he was seen before the injury he was seen climbing through the cab window of the engine. The whole case was bottomed on circumstances. It was denied in that case, that there were any defects in the train or ways or appliances. It was up to the company to show contributory negligence and for the jury to say whether it had succeeded. While in the case at bar there was scarcely any testimony for the jury to pass on in deciding the question of contributory negligence, yet, it was for them to pass upon the liability of the company under appropriate instructions. This phase of the case alone made this a case for the jury, if the unbroken line of decisions of our own court and of other states is not to be totally ignored.

The company comes to bay, and says its negligence was not the proximate cause of the injury. It claims that no matter how negligent it may have been in failing to furnish safe ways and appliances, however helpless and impotent the deceased may have been in the iron grasp of that negligence, yet rules were promulgated and the deceased violated those rules and that was the cause of the injury. It contends that it was the duty of deceased to strictly observe such rules no matter how slow the cars were running, no matter how little danger might be incurred by violating such rules; that however grossly negligent the railroad has been has naught to do with it.

We contend that to hold in this case that the violation of the rules precludes recovery would be harsh and unreasonable. In the first place, sending a man out to uncouple cars that could

not possibly be uncoupled without going between them on account of the absence of the coupling lever, was an invitation on the part of the railroad company to go in between them. And when it is further shown that in order to uncouple them it is necessary for them to be in motion on account of the grade it will be seen that in order to do his duty he would be compelled to go in between them while in motion.

Let us examine a moment a few authorities. A servant stepped between a tender and a car in order to uncouple them. The train was on a grade and in order to loosen the pin it was necessary to ease up. While the train was slowly moving he stepped along with it. His foot caught in a hole in the plank roadbed and he was run over. It was held that this was not necessarily negligent in the employee because he was in discharge of his duty in so acting. If he used due skill and caution he was not negligent. *Snow v. Housatonic R. Co.,* 85 A. D. 720; *Preston v. Central R. etc., Co.,* 84 Ga. 588.

Where a brakeman cannot easily uncouple cars when the train is standing still, and when endeavoring to uncouple them when the train is in motion, he steps between the cars and there meets with an injury which is caused by want of repairs in the roadbed, it cannot be ruled that he is careless as a matter of law, but the question is one for the jury. *Gardner v. Michigan Central R. Co.,* 58 Mich. 584; *Horan v. Chicago, etc., R. Co.,* 89 Iowa, 328; *Eastman v. Lake Shore R. Co.,* 101 Mich. 597; *Ashman v. Flint, etc., R. Co.,* 90 Mich. 567.

No man would contend that to go between cars moving at the rate of two miles an hour is *per se* dangerous for an active young man. No man would for a moment contend that the speed of the train was the cause of the injury. Then can the company by a rule create contributory negligence? Can a company by its rules exculpate itself from a violation of the rules of a higher master, the law of the land? If the railroad violates the rules of the law, the rules of the whole people, and the servant violates the rules of the railroad, is it not for the people, through the

jury, to say which violation caused the injury? *Texas, etc., R. Co. v. Gentry,* 163 U. S. 353; *Railroad Co. v. Davis,* 48 Ark. 389; 26 Am. St. Rep. 48; *Hunt v. Kane,* 100 Fed. 256; *Union etc., R. Co. v. James,* 163 U. S. 485; *Railroad Co. v. Graham,* 94 Ala. 545; 10 South. 283; *Merrell v. Railroad Co.,* 110 Am. St. Rep. 594; *Alabama, etc., R. Co. v. McDonald,* 20 South. 472; *Brown v. Louisville, etc., R. Co.,* 111 Ala. 274, 19 South. 1001; *Francis v. Railroad Co.,* 110 Mo. 387 ,19 S. W. 935; *Georgia, etc., R. Co. v. Davis,* 92 Ala. 309, 25 Am. St. Rep. 47; *Railroad Co. v. Leverett,* 48 Ark. 333, 3 Am. St. Rep. 230; *Barry v. Railroad Co.,* 98 Mo. 62. 14 Am. St. Rep. 610; *Fay v. Railroad Co.,* 11 Am. & Eng. R. Cases 193; *White v. Railroad Co.,* 72 Miss. 12, 16 South. 248.

*Bozeman & Fewell* and *McWillie & Thompson,* for appellee.

It is held by many courts, including the supreme court of the United States that it is not negligence for a railroad company to leave its frogs unblocked.

It is generally held that the operation of a railroad without blocking its frogs, switches or guard rails is not negligence. 3 Elliott on Railroads, § 1272a, citing many cases in support of this proposition.

In the case of *Southern Pacific Co. v. Sely,* 152 U. S. 145, the supreme court of the United States approved the following charge to the jury: "That if they find from the evidence that the railroad company used both the blocked and the unblocked frog, and that it is questionable which is the safest or most suitable for the business of the road, then the use of the unblocked frog is not negligence, and the jury are instructed not to impute the same as negligence to the defendant."

This decision was again followed by the supreme court of the United States in *Kilpatrick v. Railroad Co.,* 195 U. S. 624, affirming the decision of the circuit court of appeals, reported in 121 Fed. 11.

And these decisions of the court are based upon the well set-

tled rule that the master is not bound to supply the best and· ·safest of appliances, but only those which are ordinarily safe· ~and ·reasonably well adapted to the purposes to which they are applied.    And this is the well settled rule in this state.  *Kent. v. Railroad Co.,* 77 Miss.· 494, 27 South. 620; *Clisby v. Railroad·Co.,* 78 Miss. 937, 29 South. 913; *Jones v. Railroad Co.,* 90 Miss. 547, 43 South. 813.

The probability of getting the foot caught in the angle of the· ·frog was an obvious and known danger, but one that could easily be avoided by the exercise of ordinary care, as shown by the testimony of the plaintiff himself.  *Appel v. Railroad Co.,* 111 N. Y. 550, 19 N. T. 93; *Sheets v. Railroad Co.,* 139 Ind. ·682, 39 N. E. 154.

The duty to be performed by Matthews was to set out the· ·rear car in the cut on this commercial track.    In order to do· ·this, according to the testimony of the plaintiff's witness, Colston,. and defendant's witness, Beattie, three further acts were· necessary to be performed as follows:

1. To flag· the engineer to stop the train when the car reached· its proper position on the track;

2. To uncouple the air hose between the 12th and 13th cars· ·and to uncouple these· cars; and

3. To flag the engineer to go ahead.

If Matthews had performed his duty in the proper and ordinary way he could not possibly have been injured as he was. It was only by going between the cars while they were in motion that he could have been run over by them.    If he did go· in between the cars while in motion for the purpose of uncoupling them or for any other purpose it was a voluntary act on· his part and wholly unnecessary and in violation of the positive rules of the company with which he was familiar.

If Matthews was caught in the unblocked frog, it necessarily follows that he went in between the moving cars in violation of a positive rule of the company which provided that: "An employee going in between cars while train or cars are in motion

.for the purpose of coupling or uncoupling cars, or to set pins or .links or for any other purpose does so at his own risk." Rule 9.

And he also violated another rule of the company which pro- ·vided that "going between cars in motion to couple or uncouple :them and all similar imprudences are dangerous and in viola- tion of duty, and all employees are warned that if they commit .this imprudence it will be at their own peril and risk." .Rule 10.

In going between the cars while in motion to uncouple them, ·in violation of rules 9 and 10, Matthews was guilty of contribu- tory negligence, and plaintiff cannot recover for injuries due to ·his disobedience. *Railroad Co. v. Thomas,* 51 Miss. 637; *Rail- ·road Co. v. Rush,* 71 Miss. 987, 15 South. 133; *Natchez, etc. Co. v. McLain,* 33 South. 723; *Pryor v. Railroad Co.,* 90 Ala. ·32; *Railroad Co. v. Thompson,* 99 Ala. 471; *Railroad Co. v. Williamson,* 114 Ala. 131; *Huggins v. Southern Railroad Co.,* (Ala.) 41 South. 860; *Moore v. Railroad Co.,* 115 Ia. 86; *Chi- ·cago, etc. Co. v. Myers,* 95 Ill. App. 578; *Lake Shore, etc. Rail- ·road Co. v. McCormick,* 74 Ind. 440; *Sedgwick v. Illinois, etc. R. Co.,* 76 Iowa, 340; *Grand v. Railroad Co.,* 83 Mich. 564; *Schaub v. Railroad Co.,* 106 Mo. 74; *Darracott v. Railroad Co.;* :83 Va. 288; *Lockwood v. Railroad Co.,* 55 Wis. 50; *Lake v. Railroad Co.,* 80 Fed. 488.

These rules are both reasonable and wholesome. *Memphis .etc., R. Co. v. Graham,* 94 Ala. 545.

The record discloses that Matthews was in possession of one ·of the rule books containing these rules; that he was a bright, intelligent young man and was seen often looking at and read- ing this rule book, and that his work showed that he was fa- miliar with these rules.

"It is settled law that it is the duty of the employer to pro- mulgate rules, and this being true, it is the reciprocal duty of the employee to ascertain what those rules are, and according to elementary principles he is chargeable with a knowledge of

the facts to which a reasonable inquiry would lead.   3 Elliott on Railroads, § 1294.

Conceding the coupling apparatus to have been defective, there was no necessity in the case at bar for Matthews to go in between the cars while in motion, to uncouple them.   There was no hurry about setting out the cars; there was no emergency requiring prompt action, that would justify a violation of the rules and no reason why Matthews should have gone in between the cars while in motion to uncouple them.

The mere question of convenience or of saving time, no other pressing interest being involved, will not justify a disregard of the rules.   *Alabama, etc. R. Co. v. Richie,* 111 Ala. 301.

It was not shown that this violation of the rule testified to by these witnesses was in the presence of or with the knowledge of any of the officers of the defendant company.   *White v. Railroad Co.,* 72 Miss. 12

The fact that the rule was violated in the presence of conductors is not sufficient to bind the company.   *Overby v. Railroad Co.,* 37 W. Va. 524, 13 S. E. 813; *Erie v. Kane,* 118 Fed. 228, 55 C. C. A. 129; *Benion v. Railroad Co.,* 118 Ga. 283, 45 S. E. 276.

The knowledge of the habitual disregard of the rule must be brought home to some managing officer of the company, having power to act in the premises.

To enable the servant to take advantage of a waiver of the waiver of the rule, says Mr. Labatt, three evidential elements must be established:

1.  The servant must show that there had been violations of the rule, so frequent that they might properly be regarded as habitual;

2.  That these habitual violations were known to the master himself, or the employee, whose duty it was to enforce the rule; and

3.  That the master, being aware of the violations of the rule,

took no steps to secure its enforcement. This fact must be established as a necessary step in the chain of proof, which leads up to the conclusion that he acquiesced in the continued infraction of the rule. 1 Labatt, Master & Servant, p. 516.

These last two elements are wholly wanting in the evidence here, and therefore the first element was properly excluded.

This evidence was properly excluded for the further reason, well expressed by the supreme court of Alabama as follows in *Railroad Co. v. Graham,* 94 Ala. 545 (10 South. 283): "Evidence of usage and custom for many years, on the part of brakeman, to go between the cars while in motion to make an uncoupling, was introduced to show that rule 139, which prohibits this mode of coupling and uncoupling, was not insisted upon by the railroad company, was not binding upon the employees. The rule is clear and explicit in terms, free from ambiguity or equivocation. It does not "pander in a double sense." Mr. Greenleaf (2 Ev. sec. 251) says: "The true office of a usage or custom is to interpret the otherwise indeterminate intention of parties to fix the meaning of words and expressions of doubtful or carious senses." In the case of *Railroad Co. v. Johnson,* 75 Ala. 604, this court declared that evidence of usage or custom will not be received when it varies or contradicts the express terms of a contract. *Barlow v. Lambert,* 28 Ala. *Supra.* "When persons enter into express stipulations, it is a reasonable rule, subject only to a few exceptions, that neither custom nor usage will be allowed to dispense with such express stipulations." *Railroad Co. v. Kolb,* 73 Ala. 401. The rule has been declared to be "reasonable" and "wholesome." It was adopted for the protection of the company and for the safety of its employees. Evidence of usage and custom of its violation by those it was intended to protect, either to exempt them from its obligations or to subject the company to damage because of its repeated violation, does not come within the exception, and such evidence is inadmissible."

*Prima Facie Statute.* We feel sure that this court will not

go as far as counsel for appellant would have them go in applying this statute to the facts of this case.

It cannot be held with any reason that the railroad company to escape this statute must produce eye witnesses who saw the injured person at the very moment of the injury and who can say what he was doing at the moment of the injury and by what part of the car he was first struck.

In the *Korter case,* 87 Miss. 482, 40 South. 258 the deceased was seen to approach the track, as if to cross in front of a slowly moving train, and he was crushed beneath the wheels, but he was not seen at the moment of injury; there was no evidence as to the exact manner of his death, yet the court held in that case that the railroad company, by proving the movement of the train, and the want of negligence on the part of its servants in charge of the train, and the conduct of Korter immediately before he was killed, disclosed all the circumstances attendant upon the accident, and by this proof met and overthrew the presumption of negligence imposed by the statute.

This, we submit, is the true rule, and applying it to the case at bar, we say that we have fully met the presumption imposed by the statute.

Since all the circumstances connected with this injury are in evidence, this removes all necessity for resorting to legal presumption, because the legal presumption must always give way to proof; and this, therefore, is not a case in which the statutory presumption of negligence can be invoked. *Nichols v. Railroad Co.,* 83 Miss. 126, 36 South. 192; *Owen v. Railroad Co.,* 77 Miss. 142, 24 South. 899; *Korter v. Railroad Co.,* 87 Miss. 482, 40 South. 258.

FLETCHER, J., delivered the opinion of the court.

There was evidence offered in this case on behalf of the plaintiff tending to show that Matthews, who was a brakeman in the employ of the defendant company, was killed by a slowly backing train while engaged in setting out a car on an industrial

track at Carriere; that the coupling appliances on the particular car being handled were so defective as to require the flagman to go between the cars in order to do the uncoupling; that the defendant company had some of its frogs blocked and some unblocked, and that the frog at the point where the accident happened was unblocked on the day of the accident; that certain circumstances indicated that Matthews caught his feet in this unblocked frog, and thereby lost his life. It was further shown that, while the rules of the company forbade all employes from going between moving cars, yet that this rule was very commonly disregarded, and that, owing to the grade where the switch was located, the uncoupling could not be made unless the train was actually in motion, and that, by reason of a curve in the track, the engineer could not have seen Matthews, when the engineer testifies that the brakeman climbed on the moving car. On the part of the defendant there was no satis-factory showing that the rule relied on was ever certainly brought to the attention of Matthews. Clearly there was a failure to prove that any conductor or yard foreman ever caused this rule to be read by Matthews, as the rule itself required.

In the light of the evidence thus briefly rehearsed, we cannot say as a matter of law that the brakeman was guilty of such contributory negligence as would preclude recovery. Of course, employees must not wilfully disregard the rules of the company, but liability cannot be avoided solely on the ground that a rule has been violated, unless the company is itself without fault in the promulgation of the rule, not shown to have been brought to the actual notice of the employee. To say the least of it, it was for the jury to say whether this rule was known to Matthews, or whether, by the exercise of reasonable diligence on his part, it could and should have been known, and, further, whether by reason of the frequent disregard of the rule by employes, this rule could be said to have been virtually abandoned. *White v. Railway Co.,* 72 Miss. 12, 16 South. 248. Upon the subject of unblocked frogs, we feel it our duty to say

that this question was carefully considered by this court in the case of the *St. Louis & San Francisco R. Co. v. Nickerson,* affirmed without a written opinion June 29, 1908. That case was almost identical on its facts with the instant case. There, as here, it was the custom of the company to block some of its frogs and leave others unblocked. There, as here, the party injured was a brakeman who caught his foot in an unblocked frog. There, as here, there was involved a rule of the company which was shown to have been commonly disregarded. In that case, however, all the issues were submitted to the jury; and a judgment based on $7,500 verdict was affirmed. In that case, upon the subject of unblocked frogs, this court approved the doctrine contended for in 4 Thompson on the Law of Negligence, §§ 4324, 4326. It is there said:

"That a railroad company is liable in damages to its employees who themselves have been guilty of no fault for its negligence in having its switches so constructed as not to be reasonably safe, having reference to the nature of railway switches and the dangers which necessarily attend them, must be regarded as a truism, following from the general doctrines stated and illustrated in this chapter. The observance of the rule of reasonable care is demanded of the company, to the end that its switches shall be so constructed without impairing their efficiency as switches, that its employees may pass over them in the discharge of their duties without danger.

"The decisions of the courts have been very generally to the effect that for a railway company to fail to block its frogs or switches in consequence of which failure its employees get their feet caught therein and are killed or maimed, does not constitute actionable negligence, but that the risk of injury from this source is one of the risks of the service which the employee accepts. But this is not the universal doctrine, nor is it worthy of the least commendation. The better doctrine is that a railroad company owes its employees the duty of so maintaining the blocking in the space between the guard rails and the main rail

that the heels and soles of their boots will not be caught therein;
and where there was evidence tending to show that the defend-
ant was guilty of negligence in that respect by reason whereof a
switchman caught his foot between the guard rail and the main
rail and was run over, and there was no evidence on which it
could be held as a matter of law that the deceased assumed the
risk or was guilty of contributory negligence, it was held that
the trial court properly refused to take the case from the jury."

We are bound to conclude that the peremptory instruction in
this case should not have been given, but that the case should
have gone to the jury on proper instructions.

*Reversed and remanded.*