ROBERTSON, REVENUE AGENT *v.* MISSISSIPPI VALLEY CO.

[81 South. 799, In Banc, No. 20685.]

1. TAXATION. *Domestic corporations. Stock invested in stock of
   other companies.*
   Construing Code 1906, sections 4258-4264-4267 (Hemingway's Code,
   sections 6891-6898-6901), in connection with sections 112 and 181
   of the Constitution, the court held that a corporation cannot be
   taxed on that portion of its capital stock which is invested in
   shares of the capital stock of another domestic corporation.

2. COURTS. *Decisions of supreme courts as precedent. Affirmance. By
   divided court.*
   Wherein an appeal by a revenue agent in his suit to back assess
   and subject to taxation by a city, the capital stock of a corpo-
   ration, a decision by the supreme court was rendered in a like
   proceeding between the same parties involving the same ques-
   tion, which decision was an affirmance only on account of a di-
   vided court, such a decision is a judicial precedent, and should
   be followed unless and until overruled.

APPEAL from the circuit court of Yalobusha county.
HON. J. L. BATES, Judge.

Proceeding by States V. Robertson, State Revenue
Agent, against the Mississippi Valley Company. From
a judgment for defendant, the revenue agent appeals.
The facts are fully stated in the opinion of the court.

*Green & Green, Tim E. Cooper, R. B. Campbell* and
*McLaurin & Arminstead,* for appellants.

*Wells, May & Sanders, Robt. B. Mayes, Edward
Mayes, H. H. Creekmore, Price & Price, R. V. Fletcher,
Blewett Lee,* and *W. I. Defenbaugh,* for appellee.

SMITH, C. J., delivered the opinion of the court.

This is a proceeding by the state revenue agent under section 4740, Code of 1906 (section 7058, Hemingway's Code), to back-assess and subject to taxation by the city of Water Valley the capital stock of the appellee for the years 1908 to 1913, inclusive. In due course the cause reached and was tried in the court below, and at the close of the evidence the jury was instructed peremptorily to find for the appellee, and there was a verdict and judgment accordingly, from which the revenue agent appealed to this court.

The appellee is a domestic corporation domiciled at Water Valley. A portion of its capital stock is invested in real estate, and the remainder thereof ·is. invested in the shares of the capital stock of several domestic railroad corporations, the property of which was assessed by the Railroad Commission in each of the years here in question, and the taxes due by the corporations thereon were paid.

During each of the years here in question the appellee was assessed with and paid taxes only on its real estate, and the claim of the revenue agent is that it should have been, and because it was not, should now be, assessed with the value of its capital stock less the value of its real estate.

Section 4267, Code of 1906 (section 6901, Hemingway's Code), provides that:

"All joint stock companies or corporations organized under the laws of, and doing business in, this state, shall be' assessed for taxation and be taxed as follows: The president or other officer of any joint-stock company or corporation, other than banks and railroad companies, shall, on demand, on or before the first day of June in every year, deliver to the assessor of the county in which the company or corporation is domiciled or located, a written statement, under oath, of the capital

stock paid in, and its market value, and to whom each share belongs; also a statement and the market value. of all real estate owned by such company or corporation; all to be as of the first day of February of the year in which such statements shall be rendered. The capital stock of such company or corporation shall be assessed to it for taxation to the extent of the full amount of the value thereof as shown by such statement, less the aggregate value of such real estate, which shall be deducted from the value of such capital stock, such real estate to be subject to separate assessment and taxation as other real estate is assessed and taxed.''

None of our statutes provide for the assessment of the shares into which the capital stock of a corporation is divided to the owner thereof, consequently they are not taxed thereon (*State* v. *Simmons,* 70 Miss. 485, 12 So. 477), and the contention of the appellee is that, when the statute hereinbefore set out is construed in connection with sections 112 and 181 of the Constitution, and sections 4258 and 4264, Code of 1906 (sections 6891 and 6898, Hemingway's Code), in the light of the decisions of this court in *State* v. *Simmons,* 70 Miss. 485, 12 So. 477; *Bank* v. *Oxford,* 70 Miss. 504, 12 So. 203; *Panola County* v. *Carrier,* 89 Miss. 277 42 So. 347, and *People's Warehouse Co.* v. *Yazoo City,* 97 Miss. 500, 52 So. 481, a corporation cannot be taxed on that portion of its capital stock which is invested in shares of the capital stock of another domestic corporation.

The record in the case at-bar is practically identical with that on which the case of *Robertson, Revenue Agent* v. *Mississippi Valley Co.,* 77 So. 253, was tried, except as to the parties, the proceeding there being by the revenue agent for the use of the state of Mississippi and Yalobusha county, and here for the use of the city of Water Valley, and the questions there presented for determination are identical with those presented here. In that case, as here, the court below upheld

the appellees' contentions, and on appeal to this court its judgment was affirmed, the judges of this court then and now being equally divided upon the questions of law there and here involved, so that the judgment here under consideration must be affirmed not only for the reason that a majority of us cannot say that it is erroneous, but for the further reason that the decision rendered in *Robertson, Revenue Agent,* v. *Miss. Valley Co., supra,* is a judicial precedent, and should be followed, unless and until it is overruled.

We are aware that all of the courts of last resort except the English House of Lords (*Beamish* v. *Beamish,* 9 H. L. C. 274) and the Supreme Court of South Carolina (*City of Florence* v. *Berry,* 62 S. C. 469, 40 S. E. 871; *Mortgage Co.* v. *Woodward,* 83 S. C. 521, 65 S. E. 739) have held that a judgment of a court made on an equal division of the judges thereof does not decide any principle of law involved therein, and consequently is not a judicial precedent, but the reasons given therefor do not commend their decisions to our approval. No judgment can be rendered by any court without a decision by it of the principles of law involved therein, for every judgment results from the application by the court of some principle of law to the facts of the case in which the judgment is to be rendered, so that by affirming the judgment of the court below in *Robertson* v. *Mississippi Valley Co., supra,* this court necessarily decided that our statutes do not contemplate that a corporation should be taxed on that portion of its capital stock which is invested in shares of another domestic corporation. That no opinion was, or in fact could have been, written, setting forth the views of all or even of a majority of the judges participating in the decision, is not here material, for the principles of law in a case are settled, and the precedent is made by the court's decision, which is authoritatively evidenced, not by the opinion which the judges may deliver, but

by the judgment which the court renders. *Adams* v. *Railroad Co.,* 77 Miss. 302, 24 So. 200, 317, 28 So. 956, 60 L. R. A. 33; *Matthews* v. *Railroad Co.,* 93 Miss. 325, 47 So. 657, 136 Am. St. Rep. 543; Black's Law of Judicial Precedents, pp. 38 and 56.

The distinction between the decision of the court and the opinion delivered by the judges is aptly stated in volume 1, Brief Making and the Use of Law Books (3d Ed.), pp. 296, 297, as follows:

"From what has been said it is obvious that the decision must be distinguished from the opinion. As was said in *Houston* v. *Williams,* 13 Cal. 24, 73 Am. Dec. 565: "The terms "opinion" and "decisions" are often confounded. Yet there is a wide difference between them, and in ignorance of this, or by overlooking it, what has been a mere revision of an opinion has sometimes been regarded as a mutilation of the record. A decision of a court is its judgment. The opinion contains the reasons given for that judgment.' . . .

" 'The opinion of the judge,' says the court in *State* v. *Ramsburg,* 43 Md. 325, 'is an expression of the reasons by which he reaches his conclusion. These may be sustained or contradictory, clear, or confused. The judgment or decree is the fiat or sentence of the law, determining the matter in controversy in concise, technical terms, which must be interpreted in their own proper sense.' So in *Durant* v. *Essex County,* 74 U. S. (7 Wall.) 107, 19 L. Ed. 154, it was said that the reason for the signing of a decree is no part of the decision or judgment itself. The decree, and not the opinion, is the instrument through which the court acts.

"The student should remember, therefore, that it is the decision, and not the opinion of the court, which settles the point of law involved and makes the precedent. The decision is the conclusion of the court on the premises, and becomes a precedent for the principle of law which underlies it and which is the *ratio decidendi.*

The opinion sets forth the reasons of the determination, and usually states and explains them at greater or less length. The opinion, disclosing the reasons of the judge for his decision, is, of course, of great importance, for the information it imparts as to the principles of law which influenced the court and were supposed to govern the case, and which should guide litigants. But, even if there is no opinion written or filed, the decision is a precedent for the similar disposition of similar cases, though it is often difficult in such case to determine what principle is involved. In that event its nature and exact scope are to be ascertained by examining the record, to find the precise point of law which is involved, and considering the judgment given thereon.

"As an opinion is not really requisite, though it is customary, desirable, official, and, in short, judicial, the question might be asked: 'What is its binding force?' In other words, what is the authority of the opinion, as distinguished from the decision accompanied by it? The answer is that as mere opinion the opinion has no authority of or of an imperative nature, but that it does have such authority in so far as it voices the principle actually dictating the decision.

"As judges are a skilled class of a skilled profession, the normal state of affairs is that the opinion phrases accurately and fully the reasoning upon which the decision was based. From such an opinion can be easily framed, possibly even quoted, that proposition of law for which the case is an imperative authority. It is obvious, however, that the opinion may omit the reasoning upon which the decision really rested, or may give reasoning which really had no part in the decision."

Because of the fact that this court is composed of an even number of judges, who are constantly liable to be equally divided in their opinions upon questions of law presented to the court for decision, the disregard by us of former decisions of the court solely because

they were rendered on an equal division of the judges would bring so much inconvenience, and uncertainty into the administration of justice that we do not think we have the right to do so; but, in order that such consequences may be avoided, we think it is incumbent upon us to treat such decisions as being within the rule of judicial precedents.

Our views on this question were forcibly expressed by Chief Judge COOLEY in the *State Tax Cases,* 54 Mich., at page 444, 23 N. W. 189, as follows:

"When the case of the Iron Cliffs Company was decided, I assumed—unwarrantably, it seems—that the judgment, though rendered by a divided court, would be accepted by the circuit judges as law and followed by this court as a precedent, until it should be overruled by a majority of this court. I have always supposed that was the proper course, and it seemed to me a course so necessary to a dignified and orderly administration of justice that it never would have occurred to me that any other could be taken. Such a division of the court is liable to occur at anytime; and there are so many cases in which, by reason of interest, consanguinity, or former connnection with the controversy, some one judge is disqualified from sitting, that there would be constant liability to an equal division if the court consisted of an unequal number. If, therefore, a decision made may be disregarded by a circuit judge because not made by a majority, we have and can have no settled law for the state at large, and each circuit judge will determine for himself conclusively what shall be the law for his circuit, and may make it different from the law of the adjoining court. This would so much resemble a judicial scandal that I should deem it my duty to prevent it by yielding my own opinion when the same question should come up again, if yielding should be essential to prevent such a consequence. The motion that there can be anything improper or opposed to

good morals in a judge yielding his opinion when a
proper administration of justice requires it is one I
do not quite understand.   Judges are certainly doing
that every day; it would be a great mistake to assume
that every judgment in which a court unites expressed
in all respects the views of every concurring judge.''

*Affirmed.*

STEVENS, J. (dissenting).

The court, to escape an embarassing situation, falls
into grievous error.   Both the opinion and the conclu-
sions reached by the court in this case are wrong.   Error
is multiplied;   but the most important and the most
grievous error is the position which the court now for
the first time takes and announces to the effect that a
previous decision by an equally divided court ''is a
judicial precedent and should be followed.''   This an-
nouncement is contrary to the history of the doctrine
of *stare decisis* and is opposed by reason and authority.
Such a declaration is unsupported by any decision in
the United States except the Supreme Court of South
Carolina, and I shall undertake to show later that the
conclusion which the South Carolina court reached was
based solely upon the special provisions of the Con-
stitution of South Carolina, and not upon reason and
precedent.

As stated, there is more than one error in the majority
opinion.   In the first place the court holds that the
judgment which this court rendered in the former case
of *Robertson, Revenue Agent, for the Use of the State
of Mississippi and Yalobusha County* v. *Mississippi
Valley Co.,* 77 So. 253, is a precedent which should con-
trol and direct the judgment in the case at bar.   This,
in my judgment, is erroneous: First, because no opinion
was rendered by the court in the case mentioned, and
a judgment of this court rendered without a written

opinion is practically worthless as a controlling precedent. In disposing of the case which the revenue agent brought for the state and county, a short *per curiam* opinion was written simply anouncing that the judges of this court were equally divided in opinion on the question whether the judgment appealed from should be reversed or affirmed, "consequently it must be and is affirmed." It was furthermore there stated:

"Any opinion delivered herein other than this memorandum expresses only the individual views of the judge delivering or concurring therein."

The writer wrote an opinion expressing individual views on the main points argued; that is, as to the proper method for the assessment and taxation of corporations. My Brother Ethridge wrote an opinion expressing his individual views, and the opinion of Judge Ethridge was concurred in by my Brother Holden. The court, as a court neither discussed nor decided any legal principle involved in the litigation. The judgment of the lower court was necessarily affirmed for the simple reason that it could not be reversed without the combined action and vote of four members of this court. There is an unbroken line of authority holding that a decision by a divided court does not have the force and effect of judicial precedent. This is so clearly the law that I would feel a degree of embarrassment in discussing the proposition at all were it not for the fact that the court now for the first time assumes a different position. It must be remembered that the present action is a proceeding for the benefit of the city of Water Valley, which was not a party to the former proceeding, and so it is that we have a case involving a different demand for taxes and involving different parties. Had there been a written opinion in the former case of the revenue agent suing for the state and county, such opinion, attempted to be written by three members of the bench, would not be controlling in the present pro-

ceeding.   This is an important question, and much
could be written on the subject.   In justice to myself
I shall discuss to some extent the authorities.

The court has evidently been influenced in establishing
a rule of convenience, a rule whereby litigation may be
easily disposed of.   But this court is not responsible
for the unfortunate fact that we have an even number
of judges and the fact that the views of the judges
are at times in conflict.   This does not justify our
adopting a rule of chance.   The court quotes with ap-
proval the language of Judge COOLEY in *State Tax
Cases,* 54 Mich. 444, 23 N. W. 189, and the inference is
erroneously conveyed that Chief Judge COOLEY spoke
the sentiments of the Michigan Supreme Court.   Judge
COOLEY spoke his individual views, although these views
seem to have been concurred in by CHAMPLIN, J.   But in
that particular case contrary views were expressed by
other members of the Michigan court, and subsequent
decisions of the Supreme Court of Michigan show that
the views of Judge COOLY on this point never be-
came the law in Michigan, and that, on the contrary, the
Michigan court has expressly decided that a decision
by a divided court is not a precedent.   I cannot ap-
preciate the quoted declaration of Judge COOLEY that
there is nothing "improper or opposed to good morals
in a judge yielding his opinion when the proper ad-
ministration of justice requires it."   I prefer the view
that the judges of this court are commissioned and
sworn to vote their best judgment and conscientious
convictions in all cases according to the best of their
"ability and understanding, agreeably to the Constitu-
tion of the United States and the Constitution and laws
of the state of Mississippi."   The best judgment and
vote of three judges on this bench ought to have and
does have as much force as the combined judgment and
vote of the other three members of the bench.   It is
not unusual for judges to have opposing views on legal

questions and to reflect these views does not in any
wise hamper, but on the contrary, promotes, the ad-
ministration of justice.   Under our constitutional
scheme there can always be a decision in every case
and a speedy trial of all appeals.   As stated by Judge
SHERWOOD in the very case in which Judge COOLEY was
expressing his views:

"I cannot accept the suggestion of counsel for ap-
pellant that it is the duty of those members of this
court who do not believe the law to be constitutional
to unite in a decision that it is, when the members of
the court are equally divided upon the question, on the
ground that they have doubts or should have doubts,
when in fact they have none.   I do not believe the posi-
tion sound either in law or morals.   I know of no pro-
vision of the Constitution or of our statutes, nor of
any practice, requiring any such thing to be done; but,
on the contrary, the law anticipated just such a con-
dition of things as now occurs in this case, and directs
just what judgment shall be entered by this court, with-
out requiring any member of the court to stultify him-
self in the manner suggested."

The majority opinion frankly recognizes that all
the courts of last resort except the English House of
Lords and the Supreme Court of South Carolina have
held that a judgment rendered by a equally divided
court does not decide any applicable principle of law,
but, says the court, "the reasons given therefor do not
commend their decisions to our approval."   But the
court does not go further and say that the reasons given
by the House of Lords of the South Carolina court
commend themselves to our approval.   The House of
Lords act both in a judicial and a legislative capacity,
and, when sitting as a court and equally divided upon
the question whether a judgment should be affirmed or
reversed, naturally speaks with much more authority
than would a Supreme Court of any state of the Union

when disposing of a particular appeal. This court has
no voice in legislation, and an erroneous decision has
frequently been cured by legislative enactment. It
would hardly be probable that a judicial decision of
the House of Lords could be done away with by an act
of Parliament. The reason assigned by the Supreme
Court of South Carolina was the peculiar provisions of
the South Carolina Constitution expressly providing that
"if the four justices divide in an opinion the judgment
below shall be affirmed." In construing this provision
the court by a process of reasoning held that a decision
in pursuance of this constitutional provision would not
only become the law of the particular case in which
it was rendered, but a precedent to guide the fu-
ture; the court holding:

"These provisions which we have been considering
were no doubt inserted in the Constitution with the
view to secure an authoritative decision of every case
brought before this court."

In evidence of this intention the court directs at-
tention to an amendment which was offered in the con-
stitutional convention and voted down expressly de-
claring that an opinion by an equally divided court
"shall not be binding authority upon any of the courts
of the state, except in the particular case thus deter-
mined." This court is neither the House of Lords nor
the Constitution of South Carolina, and accordingly the
reason underlying the only two authorities relied upon
has no application in the case at bar.

In 15 Corpus Juris. par. 326, the text reads:

"Where the judgment of a lower court is affirmed
by reason of an equal division of opinion in the ap-
pellate court, the judgment, while binding in the par-
ticular case as fully as a decision rendered by a
unanimous court is not binding as a precedent, be-
tween other parties, it is treated as an open one, and
the fomer decision is not to be invoked as *stare*

*decisis;* and, even though the court was not equally divided, it seems to be generally considered that the principles established by a decision rendered by a majority of the judges sitting will be more readily reconsidered that if there had been unanimous concurrence in the prior decision.''

The early position of the courts was that upon an equal division of the judges no judgment whatever could be rendered. Ency. of Pleading & Practice, vol. 7, 44. But this, says the author of the text referred to, has now been changed, and upon equal division of the judges of an appellate court the judgment of the lower court must necessarily be affirmed. On page 47 the same authority declares:

''Where the judgment of the lower court is affirmed upon an equal division of opinion in the appellate court, such judgment stands only as a decision in the case in question, and not as an obligatory precedent.''

In 4 C. J., p. 1123, it is stated that such a decision ''bars another suit for the same cause, but is not obligatory as a precedent in other cases.'' In Cyc. vol. 3, pp. 406, 407, the text reads:

''A judgment rendered by an equally divided court is as binding and conclusive on the rights of the parties as if rendered upon the full concurrence of all the judges, and bars another suit for the same cause. But such judgment stands only as a decision in that particular case, and not as a precedent.''

So likewise in Cyc. vol. 11, p. 746, it is declared:

''A decision rendered by a divided court is not generally considered an obligatory precedent.''

The true doctrine has been clearly stated by the Supreme Court of United States speaking through Mr. Justice Lurton, in *Hertz* v. *Woodman,* 218 U. S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001, as follows:

''When this court, in the exercise of its appellate powers, is called upon to decide whether that which has

been done in the lower court shall be reversed or affirmed, it is obvious that that which has been done must stand unless reversed by the affirmative action of a majority. It has therefore been the invariable practice to affirm, without opinion, any judgment or decree which is not decided to be erroneous by a majority of the court sitting in the cause. The earliest precedent is that of *Etting* v. *Bank of United States,* 11 Wheat. 59, 78, 6 L. Ed. 419, 432. Chief Justice MARSHALL said at the conclusion of the opinion: 'In the very elaborate arguments which have been made at the bar, several cases have been cited which have been attentively considered. No attempt will be made to analyze them, or to decide on their application to the case before us, because the judges are divided respecting it. Consequently the principles of law which have been argued cannot be settled; but the judgment is affirmed, the court being divided in opinion upon it.'

"In *Durant* v. *Essex Co.,* 7 Wall. 107, 110, 19 L. Ed. 154, 156, Mr. Justice FIELD, for this court said, in repect to the effect of the affirmance by a divided court: 'There is nothing in the fact that the judges of this court were divided in opinion upon the question whether the decree should be reversed or not, and therefore ordered an affirmance of the decree of the court below. The judgment of affirmance was the judgment of the entire court. The division of opinion between the judges was the reason for the entry of that judgment; but the reason is no part of the judgment itself.'

"To the same effect are *Westhus* v. *Union Trust Co.,* 94 C. C. A. 95, 168 Fed. 617; *Hartman* v. *Greenhow,* 102 U. S. 672, 676, 26 L. Ed. 271, 273. A different rule seems to have been sanctioned in the English courts. *Catherwood* v. *Gaslon,* 13 Mees. & W. 261; *Beamish* v. *Beamish,* 9 H. L. Cas. 274.

"Under the precedents of this court, and as seems justified by reason as well as by authority, an affirmance

by an equally divided court is, as between the parties, a conclusive determination and adjudication of the matter adjudged; but the principles of law involved not having been agreed upon by a majority of the court sitting prevents the case from becoming an authority for the determination of other cases, either in this or in inferior courts.''

I shall now refer briefly to some of the more prominent decisions of the state courts. In *State ex rel. Hampton* v. *McClung,* 47 Fla. 224, 37 So. 51, it is stated in the opinion of the court by CARTER, J.:

''As no matters of law are decided so far as the question upon which the court is equally divided is concerned, the judgment possesses no dignity as a judicial precedent. It carries upon its face a badge which precludes any application of it in future under the doctrine of *stare decisis.''*

In the case of *City of Kalamazoo* v. *Crawford,* 154 Mich. 58, 117 N. W. 572, 16 Ann. Cas. 110, paragraph 1 of the headnotes reads:

''A decision by a divided court is decisive of that case, and does not settle the law for other cases.''

· The court, by HOOKER, J., discusses some of the leading authorities, and shows conclusively that the quoted reflections of Chief Judge COOLEY never became the law in Michigan. This is further reflected by the case of *Gourlay* v. *Insurance Co.,* 189 Mich. 384, 155 N. W. 483; a very recent case decided in 1915. In *Bratt* v. *Cornwell,* 68 W. Va. 541, 70 S. E. 271, the court repudiated a conclusion of law stated in the syllabus of a prior West Virginia case because the decision was the result of an equally divided court. Paragraph 3 of the headnotes states:

''The last clause of point 2 of the syllabus published in *Billingsley* v. *Clelland,* 41 W. Va. 234, 23 S. E. 812, is not the law of this state, since decision in that case was by an equally divided court.''

In *Town of Durham* v. *Richmond & D. R. Co.,* 113 N. C. 240, 18 S. E. 208, the opinion of the North Carolina Supreme Court declares:

"Following the uniform practice of appellate courts in such cases, the judgment below stands, not as a precedent, but as the decision in this case"—citing among others the decisions of Chief Justice Marshall in *Etting* v. *Bank,* 11 Wheat. 59, 6 L. Ed. 419, and Chief Justice Taney in *Benton* v. *Woolsey,* 12 Pet. 27, 9 L. Ed. 987.

In discussing the maxim *stare decisis* the Supreme Court of Illinois, in *Hopkins et al.* v. *McCann,* 19 Ill. 113, declared:

"In a solitary case, and by a divided court, upon a disputed or doubtful point, the maxim should not and does not apply, but courts are left free to revise and reverse a former ruling, if found, on more critical examination and more mature deliberation, to be erroneous."

The Supreme Court of Arizona, in *Territory* v. *Gaines,* 11 Ariz. 270, 93 Pac. 281, by a unanimous decision reached the same conclusion, stating, among other things:

"The affirmance being by a divided court, it does not have the force of a cogent precedent. . . . Wherefore we will inquire into the matter involved as if it were a matter of novel impression."

The Supreme Court of Pennsylvania, in *Re Griel's Estate, Appeal of Will,* 171 Pa. 412, 33 Atl. 375, expressly ruled on the point; paragraph 1 of the headnotes in 33 Atl. 375, reflecting and stating the views of the court as follows:

"A decree of the lower court, affirmed by a divided court, is not a decree or judgment of the Supreme Court in support of which the rule of *stare decisis* can be invoked."

It will be noted that the Supreme Court of Pennsylvania perhaps goes a step further than most of the courts in holding that a judgment rendered by a divided appellate court is not in reality the decision of the Supreme Court, but of the trial court from which the appeal is prosecuted. And the Supreme Court of Iowa, in the *City of Dubuque* v. *I. C. R. R. Co.*, 39 Iowa, 56, employs this language:

"None of the opinions, considered alone, has the force of a decision of the court, because no one of them is concurred in by a majority of the justices; taken collectively, they cannot be regarded as binding upon us in the character of a precedent."

But we need not go outside of our own state for precedents. In the very early case of *McNutt* v. *Lancaster et al.*, 9 Smedes & M. 570, Mr. Justice THATCHER, having been of counsel, took no part in the decision. Mr Justice CLAYTON and Chief Justice SHARKEY could not agree upon the judgment to be rendered; Judge CLAYTON being of the opinion that a judgment should be entered by the Supreme Court "for the penalty of the bond." The Chief Justice was of the opinion that no judgment should be rendered, but both agreed that the judgment appealed from should be reversed. The situation is described in the language of Judge CLAYTON:

"My own opinion is that a judgment should here be entered for the penalty of the bond. The Chief Justice thinks that no judgment should be rendered. The other judge was counsel in the court below, and can give no opinion. This is a state of things not provided for in the law. If we differed in opinion, the judgment would be affirmed. How. & Hutch. 537. But we agree that the judgment must be reversed, but cannot agree as to the judgment which should be then rendered. In this exigency the cause must be remanded, to be determined by the court below, upon such principles as it may deem right. We cannot agree upon any instructions to guide

it, but differ upon every material point in the cause. Judgment reversed, and new trial awarded.''

This case reflects the uniform holding that, where a majority of the judges of any appellate court cannot agree upon the principles of law to be announced, no principle of law is in fact decided. In *Brickell* v. *Lightcap,* 115 Miss. 417, 76 So. 489, an opinion was prepare expressing the view of four members of the court. On suggestion of error Judge Cook changed his views, leaving the judges equally divided. Thereupon this court by *per curiam* opinion said:

"It follows from the foregoing that the opinion heretofore rendered herein affirming the decree of the court below is no longer the opinion of a majority of this court, and therefore is no longer the opinion of the court, but expresses only the views of the judges now concurring therein.''

This shows conclusively that the present attitude of the court as announced in the majority opinion is a complete innovation and a complete reversal of the position taken by the court in *Brickell* v. *Lightcap, supra.*

I also take issue with the declaration of the court that: A "precedent is made not by the opinions delivered by the judges, the primary purpose of which is to set forth the reasons which influenced them in reaching their conclusions, but by the judgment which the court rendered.''

The court refers to *Adams* v. *Railroad Co.,* 77 Miss. 302, 24 So. 200, 317, 28 So. 956, 60 L. R. A. 33. I do not think our court in the Adams Case made any such declaration or announced any such principle. The textwriters, in discussing the maxim *stare decisis,* speak of decisions of the court, and not judgments. The rule is stated in *Corpus Juris* as follows:

"It is a well-established general rule that, where a principle of law has become settled by a series of

decisions, it is binding upon the courts and should be followed. This rule, which is usually known and referred to as the rule of *stare decisis* is founded largely upon the consideration of expediency and the sound principle of public policy." 15 C. J. 304.

And in paragraph 329 the same text declares: "The authority of a former decision as a precedent must be limited to the points actually decided on the facts before the court. And an opinion is not authority for what is not mentioned therein and what does not appear to have been suggested to the court from which the opinion emanates."

The judgment entered upon the minutes is, of course, evidence of the conclusion reached by the court, but there are so many questions both of law and fact usually involved and presented in a lawsuit that it is practically impossible to determine from the mere judgment of the court the points that were argued and necessarily decided. There is a vast difference between the doctrine of *res adjudicata* and *stare decisis.* 15 C. J. par. 305; *Adams* v. *Railroad Co.,* 77 Miss. 265, in the opinion, 24 So. 200, 317, 28 So. 956, 60 L. R. A. 33.

There was a plea of *res adjudicata* in the case at bar, but counsel in this case did not so much as invoke the rule of *stare decisis.* The court has invoked it for them. That the plea of *res adjudicata* is not well taken is conclusively shown by *Adams* v. *Railroad Co., supra.* The court in the present case decides nothing, but disposes of the present appeal solely on the authority of *Revenue Agent* v. *Mississippi Valley Co.,* 77 So. 253. But what did the court decide in the former case? Did the court construe our statute (section 4267) and determine whether this statute means what it says when it declares that "the capital stock of such company or corporation shall be assessed to it for taxation to the extent of the full amount of the value thereof, . . . less the aggregate value of such real estate."

And, if the statute means exactly what it says, does the court hold that it was unconstitutional? What principles were announced or adopted for the guidance of revenue officers or the courts of this state hereafter? Did the court construe section 181 of the Constitution or attempt to declare its meaning? The only declaration of views favorable to appellee company in the former case were the views expressed by Judge ETHRIDGE. Does the court now adopt Judge ETHRIDGE's opinion as the opinion of the court? If so, the court goes to the extent of holding that the charter of the Mississippi Valley Company "is held at the will of the state, and its franchise certainly can have no appreciable value as a franchise." This declaration was repudiated by learned counsel for appellee. The voice of the court in both cases is silent as to any decision of the legal questions involved, and only the cold judgment entered upon the minutes of the court, in my judgment, thus far has spoken. This suggests to my mind the pertinent statements of the Supreme Court of Iowa in the *City of Dubuque* v. *I. C. R. R. Co., supra,* 39 Iowa. On page 79 of the the opinion it is said:

"Let us inquire what is meant by the term 'precedent' and what elements in a case are to be followed under the rule *stare decisis.* It is not the judgment which the court pronounces upon the rights of the parties involved in the suit. A judgment that A recover of B one thousand dollars is not to be cited as a precedent in a subsequent case to support the right of C to recover the same sum from D, for the judgment is simply a conclusion reached by the application of rules of law to certain facts. We are to look farther in a case than to the judgment to find that which constitutes a precedent. It is found in the rules of law which are the foundation of a judgment. These rules constitute the formulæ by which rights of parties are to be determined. When settled by adjudication, courts, under the doctrine

*stare decisis* are required to apply them to subsequent cases. Upon the authority of the decisions announcing them they are to be taken as correct. When we look to a case which is called a precedent, we search out these rules for application to the facts in dispute before use; the judgment therein constitutes a rule in no sense—it is evidence of the application of rules, legal formulæ, to facts; it is the formal recognition of such rules. A case is to be regarded as a precedent when it furnishes rules that may be applied in settling the rights of parties. These rules are to be discovered in the opinions of the judges, and constitute the reasons for the decision. Lord MANSFIELD says: 'The reason and spirit of cases make law; not the letter of particular precedents.' *Fisher* v. *Prince,* 3 Burrows, 1364. And Lord HOLT declares that 'the reason of a resolution [judgment] is more to be considered that the resolution itself.' *Cage* v. *Action,* 12 Mod. 294.

"It has always been held that a decision of a court concurred in by less than a majority of the judges has not the force of a precedent. When there is an equal division of opinion in this court, the decision of the court below stands affirmed. There must be a concurrence of a majority of the judges upon the principles, rules of law, announced in the case, before they can be considered settled by a decision. If the court be equally divided or less than a majority concur in a rule, no one will claim that it has the force of the authority of the court."

And in *Fraser* v. *Willey,* 2 Fla. 118, it is said:

"It seems clear that the opinions of the justices as a court are to be written, and, if there should not be a majority of the court agreeing on one side of the question, there can be no decision. There must be something decided before the statute applies, and, if the court is divided, can there be, in the nature of things, a decision? The lexicographers tell us that the term 'decided' im-

plies 'decision' something that is unequivocal, that puts an end to doubt. Suppose the court stand opposed two to two; are there any doubts removed; is not the case left in the same situation in which it came up, leaving the questions of law involved in it as open questions and subject to future adjudication? Can the opinion of the court be cited as authority in any future controversy? Certainly not, because there is a perfect mathematical balance with no preponderance on either side.''

In line with the thought in the opinion just quoted from, I should say that precedents are valuable only in so far as they reflect what the law of the land is. Our search in any particular case is for the law. A legal precedent is evidence of law. These precedents must necessarily be found in official opinions of courts interpreting and expounding the law. The stability of any opinion depends upon the fact that it is the well-reasoned, matured judgment and conclusion of a majority of the court. If the court upon mature reflection is equally divided as to a rule of conduct or the application of a legal principle or the construction of a statute or a constitutional provision, surely the matter at issue has not been put at rest, at least until the legislature takes action.

There are practical considerations involved. If it becomes known that the decision by a divided court will operate as a precedent, then prospective litigants, desiring to contest a new statute, a constitutional amendment, or to seek an adjudication on any important public question, may hasten to the district whose presiding judge, it may be thought or hoped, is in sympathy with the plaintiff; and, furthermore, a favorable opinion by a trial judge thus secured might possibly be in conflict with the individual views of every other trial judge in the state. Cases involving the same law point may be appealed about the same time from different dis-

tricts and reflecting contrary decisions. If several re-
cords reach the Supreme Court involving the same
point, then in event the members of this court should
be equally divided we have in evidence a mere doctrine
of chance as to which record is to be considered first.

To make a controlling precedent the court in this
case has broken a thousand precedents, and yet it is
said that "consistency is a jewel."

I think also the court is wrong on the law and facts
of this particular case. By a peremptory instruction the
trial court adjudged that the Mississippi Valley Com-
pany need not pay the municipality of its domicile a
cent of taxes. Here we have a domestic corporation with
a paid-in capital of three hundred thousand dollars
domiciled in the city of Water Valley and yet not
paying into the treasury of the city a cent of taxes.
There cannot be any dispute about the liability of ap-
pellee company to pay taxes upon its intangible prop-
erty and the value of its franchise in the town of its
domicile. There is only one avenue of escape, and that
is for the corporation to clearly establish that its intan-
gible property and franchises have no value. There has
been much said *pro* and *con* as to the value of appellee's
capital stock, and if the jury had decided the value, ap-
pellee might have some standing on this appeal. There
has never been even a contention by appellee that its
capital stock is worthless. On the contrary, the return of
the Mississippi Valley Company for the year 1908, the
first year involved in this back assessment, shows the
par value of the stock as three hundred thousand dol-
lars and actual value forty-three thousand, one hundred
and twenty-five dollars. By no process of juggling with
figures could it be demonstrated that the capital stock
is worthless. But, on the contrary, looking through the
form to the substance, it is manifest that appellee con-
trols the transportation business of Mississippi, and that

the very fact that it is a holding company with a perpetual charter and does wield such an influence makes of its charter one of the most valuable ever granted by a sovereign state. Surely it ought not to monopolize the traffic and profits from the chief transportation business within our commonwealth without paying at least a few cents into the treasury of the town where it lives, moves, and has its eternal being. The assessments by the revenue officers are *prima-facie* evidence of correctness, and this *prima-facie* showing, in my judgment, has not been overthrown by any competent testimony. On this point it is significant that the jury on the trial of the case involving state and county taxes reached a verdict, practically on the same testimony, that the total fair market value of the capital stock exceeded six million dollars. It may be that the verdict was excessive, but it was nearer right than a verdict for nothing.