CHICAGO, R. I. & P. R. Co. v. ROBERTSON, REVENUE AGENT.

[84 South. 449. In Banc. 21150.]

TAXATION. *Statute providing a fixed charge on gross receipts of freight line company in lieu of other taxes is unconstitutional.*

The provision of section 112 of the state Constitution of 1890 that taxation shall be equal and uniform, and that property shall be asssessed for taxes according to its true value, can be complied with only by taxing all property at the same rate on its true value, and the legislature is without power to provide for the taxation of property by any other method. Consequently chapter 113, Laws of 1912, which provides for a fixed charged on the gross receipts of a freight line company in lieu of all taxes on the property of the company used in its business, is void.

STEVENS, J., dissenting.

APPEAL from Chancery Court of Hinds County.
HON. LAMAR F. EASTERLING, Chancellor.

Attachment in chancery by Stokes V. Robertson, State Revenue Agent, against the Chicago, Rock Island & Pacific Railroad Company, with the Illinois Central Railroad Company and another as garnishees to recover taxes due by the first-named company to the state. Cause heard on bill and answers, and decree for complainant for a penalty, with direction to first-named company to make discovery of its gross earnings, and it appeals. Reversed, and judgment entered dismissing the bill of complaint.

*Wright, Miles, Waring & Walker, M. L. Bell* and *W. F. Dickinson,* for appellant.

*Green & Green, amici curiæ.*

*Robt. B. Mayes, Clayton D. Potter,* and *V. J. Stricker,* for appellee.

Smith, C. J., delivered the opinion of the court.

This is an attachment in chancery by the state revenue agent against the Chicago, Rock Island & Pacific Railroad Company, a corporation chartered under the laws of the states of Illinois and Iowa, as the principal defendant, and hereinafter designated as the company, and the Illinois Central Railroad Company and the Alabama & Vicksburg Railway Company as garnishees; the bill alleging that they are indebted to the principal defendant or have property belonging to it in their possession. The recovery sought is for taxes alleged to be due the state of Mississippi by the company for the year 1912 under the provisions of chapter 113, Laws of 1912, the parts of which that are here material are as follows:

"Section 1. Every person or persons, joint-stock association or corporation, wherever organized or incorporated, engaged in the business of operating cars, or engaged in the business of furnishing or leasing cars not otherwise listed for taxation in Mississippi, for the transportation of freight (whether such cars be owned by such company or any other person or company) over any railroad line or lines, in whole or in part, within this state, such line or lines not being owned, leased or operated by such company, whether such cars be termed box, flat, coal, ore, tank, stock, gondola, furniture, or refrigerator cars, or by some other name, shall be deemed a freight line company."

Section 2 provides that such companies shall on or before the 1st day of May in each year file with the state auditor a statement setting forth, among other things:

"The total number of cars used and the whole length of the lines of railway over which the company runs its cars, and the length of so much of such lines as is without and is within the state of Mississippi."

"Sec. 3. For the purpose of taxation, all cars used exclusively within this state, or used partially within and without the state, are hereby declared to have a *situs* in the state, and the value of such property for the purpose of taxation is to be determined as provided by section four (4) and five (5) of the act.

"Sec. 4. Every freight line company as hereinbefore defined (1) shall annually, between the first (1st) day of January and the first (1st) day of February, . . . make and file with the state auditor 'of this a statement showing the total gross earnings received from all sources by such freight line company, within the state, for the year ending December 31st next preceding.

"Sec. 5. The term 'the total gross earnings received from all sources by such freight line companies within this state, as used in section four (4) of this act, is hereby declared and shall be construed to mean all earnings on business beginning and ending within the state, and a proportion, based upon the proportion of mileage over which such business is done, of earnings of all interstate business done, of earnings on all interstate business passing through or into or out of the state; and all such freight line companies shall, on or before the first day of February in each year, pay to the state treasurer of the state of Mississippi, a sum of money equal to three (3%) per centum upon the gross earnings of such company for the year ending on the last day of December next preceding, the same to be a tax on its property and in lieu of all other taxes upon the same."

Other sections provide for the collection of the tax, the method by which the auditor shall ascertain the gross earnings of a freight line company failing to make a report thereof to him and imposing a penalty of five hundred dollars on each freight line company failing to make such report.

The bill of complaint alleges that the company did a freight line business in Mississippi during the year

1912, but failed to make a report thereof to the auditor. and prays for a discovery of the gross amount earned by the company in such business for the year 1912, for a decree against it for three per cent. thereof and for the five hundred-dollar penalty imposed by the statute for the failure to make the report required of it.

The cause was heard on bill and answers, from which it appears that the company is, and was during the year 1912, a common carrier operating railroads in several states, none of which are in Mississippi, and which connect with other railroads making its railroads a part of the railway transportation system of the United States; that pursuant to the orders of the Interstate Commerce Commission, to which it is subject, it delivers its cars when loaded with commodities destined for points beyond its own lines to connecting and intervening carriers, by which they are moved to the destination of such commodities. From which it results that some of its cars move into and out of the state of Mississippi, and while being so moved and until returned to it the company receives from the carrier in whose possession the cars are "a *per diem* rental" therefor, such cars being the only ones owned by the company that come into the state of Mississippi at any time. The discovery prayed for was not made. The court below rendered a decree directing the company to pay to the complainant the five hundred dollar-penalty and to make the discovery of its gross earnings prayed for, from which decree the company prayed for and was granted an appeal to this court to settle the principles of the case.

Among the many questions raised by counsel for the appellant company, and the one on which our judgment will turn, is the power *vel non* of the legislature to enact a statute of the character of chapter 113, Laws of 1912. If the tax here sought to be collected is imposed directly on the company's gross earnings as such, they

being derived partly, if not wholly, from interstate commerce, it is a burden on such commerce and consequently void. But if the gross earnings of the company's are simply taken as the measure of the value of the cars owned by the company that come into the state of Mississippi, and the amount of the tax is not in excess of what would be legitimate as an ordinary tax on the cars with reference to their use as a part of a going concern, it does not in fact restrain or burden such commerce, and will be valid if permitted by the state Constitution. *Cudahy Packing Co.* v. *State of Minn.*, 246 U. S. 450, 38 Sup. Ct. 373, 62 L. Ed. 827.

The contention of counsel for the company therefore is, and sections 3 and 4 of the statute so declare, that the tax is on the cars of the company that are used partially within and without the state; the aggregate amount of the rentals received therefor by the company being simply taken as the measure of their value. The validity of the statute, then, assuming that the tax imposed amounts to no more than would be legitimate as an ordinary tax on the cars, will depend on whether or not it violates section 112 of our state Constitution, which is as follows:

"Taxation shall be uniform and equal throughout the state. Property shall be taxed in proportion to its value. The legislature may, however, impose a tax *per capita* upon such domestic animals as from their nature and habits are destructive of other property. Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county. But all such property shall be assessed at its true value, and no county shall be denied the right to levy county and special taxes

upon such assessment as in other cases of property situated and assessed in the county."

This section, as it appears in section 20, art. 12, of the Constitution of 1869, is as follows:

"Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law.

While that Constitution was in force, the legislature, with the approval of this court (*Vicksburg Bank* v. *Worrell,* 67 Miss. 47, 7 So. 219; *Telegraph Co.* v. *Adams,* 71 Miss. 555, 14 So. 36), was accustomed to impose privilege taxes on certain characters of business in lieu of an *ad valorem* tax on the property used therein. But the convention of 1890, evidently for the purpose of insuring equality of taxation by preventing such discriminations in the methods of valuation, as was pointed out in *Adams* v. *Miss. State Bank,* 75 Miss. 701, 23 So. 395, and *Adams* v. *Bank of Oxford,* 78 Miss. 532, 29 So. 402, rewrote the section, and among other things provided that property shall be assessed for taxes at its "true value;" this requirement being twice set forth therein. In order that the equality of taxation contemplated by this section may exist, not only must all property be assessed at its true value, no substitute therefor being permissible (*Thompson* v. *Kreutzer,* 112 Miss. 165, 72 So. 891), but there must be no discrimination in rates between different species of property. All property must be taxed at the same rate on its true value. Neither of these requirements are here present, for gross earnings from the cars sought to be taxed are substituted for their true value, and the rate of taxation, three per cent., is different from that imposed on other property; the rate on other property for the year 1912 being six mills on the dollar. Chapter 87, Laws of 1912.

That the legislature may have been of opinion that the amount of taxes that would be paid by freight line companies under this statute would be a just equivalent

for the taxes they would pay on the true value of their property conferred upon it no power to enact the statute, for the Constitution as now written forbids the substitution of any other method of taxing property for the one therein prescribed. The question here under consideration is one of power, and not of economics. *Owensboro National Bank* v. *Owensboro*, 173 U. S. 664, 19 Sup. Ct. 537, 43 L. Ed. 850; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901. This section of the Constitution was so contrued by this court in 1898 in *Adams* v. *State Bank*, 75 Miss. 701, 23 So. 395, wherein it was said that:

"Property must be assessed at its 'true value.' This must be done in order to prevent unjust discrimination by selecting different modes of valuation, as had occurred under the Constitution of 1869. The Constitution of 1890 manifestly intended that stocks, bonds, and all other property should be assessed at what it was really worth, and not valued by any arbitrary rule; no discretion, as to violation, being left to the legislature, as the courts had held was done by section 20, art. 12, of the Constitution of 1869."

In 37 Cyc. 760, it is said that: "A constitutional requirement that all property shall be taxed in proportion or according to its value is mandatory upon the legislature, and imposes a rule for its assessment which cannot be varied, as to such taxes as are within the application of the provision. In particular, it forbids the levy of specific taxes and requires that they shall be imposed *ad valorem*. Such a provision is also generally taken as prohibiting the commutation of taxes, in so far as that is involved in imposing a fixed charge on receipts, amount of business, or output in lieu of all taxes on property owned, and as prohibiting a classification of property and taxation of the different classes at different rates."

We are not here concerned with the power *vel non* of the legislature to exempt property from taxation, or to impose privilege and income taxes; for the intention of the legislature in enacting the statute here in question, as clearly expressed therein, was not to exempt the property of freight line companies from taxation, but to tax it in a manner different from that provided by the Constitution. The scheme here provided for valuation and assessing the property of freight line companies is not authorized by the provision of section 112 of the Constitution that "the legislature may provide for a special mode of valuation and assessment . . . for particular species of property . . . not situated wholly in one county," for the section further expressly provides, as was pointed out in *Railroad* v. *Adams,* 81 Miss. at page 103, 32 So. at page 942, that "all such property shall be assessed at its true value."

Another objection to the statute by counsel for the company is that it also violates the provision of the Constitution that—"No county shall be denied the right to levy county and special taxes upon such assessment as in other cases of property situated and assessed in the county."

But we will express no opinion thereon, since we must hold the statute void for the reasons hereinbefore set forth. The case of *Cudahy Packing Co.* v. *Stovall,* 112 Miss 106, 72 So. 870, being in conflict herewith, is overruled.

Reversed, and judgment here dismissing the bill of complaint.

*Reversed.*

STEVENS, J., dissents.

ETHRIDGE, J. (specially concurring). I concur fully in the opinion as written by the Chief Justice, so far as the opinion deals with the controversy presented by the

record, but desire to offer some additional reasons on the point decided, and also think we ought to decide the proposition pretermitted in the chief opinion, so that the legislature may be fully advised as to the view of the court thereon.

The provision of section 112 of the state Constitution —that "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value. But the legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations, or associations not situated wholly in one county"—means that property of one person or corporation should be assessed only under general laws and by uniform rules, and according to its true value, and has no reference to taxes, as distinguished from assessment, nor does it authorize a special method of taxation as distinguished from valuation and assessment, and does not have reference to taking any one method in lieu of another method, but has reference to arriving at the value of the property, and, when the value is arrived at, then the property so valued must be taxed in the same way and to the same extent as other property. This is apparent when we consider section 181 of the Constitution in connection with section 112. This section specifically provides that "the property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals," subject only to certain exceptions named in section 181, which do not embrace the property involved here. Neither section authorized the legislature, as to the property here involved, to adopt a distinct method of taxing in lieu of *ad valorem* tax.

The act under review provides that it shall be taxed with three per cent. of the gross income derived from the sources named in the statute. I fail to see how gross

income has any real relation to value. It seems to be entirely arbitrary in the method of valuation, if indeed it is valued at all. It is well known that *ad valorem* taxes on property vary from year to year. For the present year the state *ad valorem* tax is nine mills, for some of the years in the past it has been five and one-half mills, for some years six mills, and 'for some years six and one-half mills.; but under the method used in the act under review the tax on this property would be the same, regardless of variations in the amount of the state, county, and municipal levies that other property had to bear. It is easily perceived that a business might, or could, be conducted, and the property used, so as to produce a considerable gross revenue, and still be operated at a loss. Again, property commanding a good value on the market might, because of disuse or other causes, produce a very limited gross income during a particular year, and indeed might produce none at all.

The provisions in the section, that the legislature may provide for a special mode of valuation and assessment for certain kinds of property, is followed by the provision that—"All such property shall be assessed at its true value, and that no county shall be denied the right to levy county and special taxes upon such assessment as in other cases of property situated and assessed in the county."

This section clearly means that the county shall have the right to levy county and special taxes upon that class or classes of property whose valuation and assessment may be made by a special mode, owing to its situation in more than one county, and inasmuch as the act under review makes the three per cent. of the gross earnings in lieu of all taxes, and no scheme for distributing the taxes so collected among the counties and municipalties of the state in which the property is situated, or through which it is operated, it clearly violates the Constitution for this reason.

The evil designed to be remedied in the Constitution (section 112) is well known for prior to the Constitution of 1890 the legislative history of the state shows that many special schemes of taxation were adopted, under which the state would secure a favorable tax, and the counties would be denied the right to tax certain property situated in or running through them. For instance, some of the railroads were taxed by a privilege tax at so much per mile in lieu of all other taxes, and the counties could not tax such property for local purposes at all.

Section 181 of the Constitution specifically authorizes special methods of taxing banks, building and loan associations, and domestic insurance companies. It is a well-known rule of construction that, where a statute or the Constitution enumerates classes to be excepted from the operation of a statute or the Constitution, the enumeration excludes all others not so enumerated. In *Brennan* v. *Miss. Home Ins. Co.,* 70 Miss. 531, 13 So. 228, it was said that the provisions that no county shall be denied the right to levy county or special taxes upon certain assessments applies only to assessments of railroad or other like property not situated wholly in one county. As I understand this case, the court understood that the property authorized to be specially assessed or valued by a special method, such as railroad and other corporate property, and particular species of property belonging to persons, corporations, or associations not situated wholly in one county, applied only to property which was situated partially in two or more counties, but which, owing to the unit theory, might have a value as a whole not easily apportionable between the counties; and this is my view of this provision.

Some members of the court as now constituted think this provision authorized the assessment of corporate property by a special mode different from other property, even though it was wholly situated in one county;

but it seems to me that the decision of this court in
*Robertson, Revenue Agent,* v. *K. C. Lumber Co.,* 77 So.
246; *Robertson, Revenue Agent,* v. *Miss. Valley Co.,* 77
So. 253, and *Robertson, Revenue Agent,* v. *Mississippi
Valley Co.,* 120 Miss. 159, 81 So. 799, settles this ques-
tion unfavorably to this view, for under the last case
named the decisions constitute precedents so far as the
issues therein presented for decision are concerned, re-
gardless of the expressions in the individual opinions
then written.

In the *K. C. Lumber Co. Case, supra,* the question
was clearly presented and decided, though by a divided
court, in favor of that theory that all property of a
private corporation of a physical and tangible nature
must be assessed and taxed in the county or munici-
pality where situated; and, if the conclusion or judg-
ment then rendered is authority, it seems inescapable
that the reasoning of the opinion expressing my own
views as to the issues there presented is logical and
sound. In the *Brennan Case,* 70 Miss. 531, 13 So. 228,
the foundation and authority for the conclusion reach-
ed rests in that provision of section 181 of the Consti-
tution which provides:

"And domestic insurance companies shall not be re-
quired to pay a greater tax in the aggregate than is re-
quired to be paid by foreign insurance companies doing
business in this state, except to the extent of the excess
of their ad valorem tax over the privilege tax imposed
upon such foreign companies."

The Constitution having thus expressly provided that
domestic insurance companies should not be taxed to
a greater extent than foreign companies, the court nec-
essarily must give effect to the Constitution rather than
to the legislature or the taxing authorities, and for that
reason the court had full authority to make a decision
which limited the tax imposed upon a domestic com-
pany.

I have expressed my opinion upon the concluding sentence of section 112, so as to bring into view of the legislative authorities a consideration of this section, so that in framing taxation schemes under said section it might be advised of the probabilities to be encountered in running contrary to the plan and purpose of the Constitution, and the dangers of enacting legislation experimental in character. As has been often said, "The old paths are the best paths," and the system of imposing taxation with an equal hand, so as to impose the burden equally, is fair and just and should be adhered to.

It is said in the brief for appellee that the property sought to be taxed here is fugitive, transitory, and hard to locate; in other words, that it is tramp property, here to-day and there to-morrow, and that in the very nature of things the county and municipality cannot tax the property, and that the county can lose nothing by reason of no provision being made for county taxes on this kind of property. I think it is a sufficient answer to say that, if the property is domiciled in the state, it must necessarily be domiciled in some county of the state, for the entire territory of the state is divided into counties. If it can be valued and taxed for state purposes, it may also be valued for county purposes.

The Constitution, in authorizing the legislature to provide a special mode of valuing and assessing the classes of property therein named, does not, in my judgment, authorize the legislature to provide a separate and special systetm for each kind or class of such property. The legislature by general law has provided a method for assessing such property under which, in my judgment, this property may be assessed and valued, regardless of the unconstitutionality of the law under review. The general statute has worked satisfactorily as to railroad, telegraph, telephone, sleeping car, and

express companies, and could be applied to any other company operating from one county to another over fixed tracks. The rolling stock of companies like the one involved here may be taxed exactly like the rolling stock of railroad companies, and under section 6818 Hemingway's Code, it is not exempt from taxation, and all property not so exempt is taxable, if situated or having a situs in this state. The failure of the statute here condemned need not defeat the state of any taxes.