HÁTTIESBURG GROCERY CO. *v.* ROBERTSON, STATE REVENUE AGENT.

[88 South. 4, No. 21739.]

1. TAXATION.  *Income of corporations taxable as income of "persons" under statute.*

· The term "person," when used in any statute, covers artificial as well as natural persons (section 1590, Code of 1906; section 1357, Hemingway's Code); consequently the incomes of corporations are included in the tax imposed by chapter 101, Laws of 1912 (Hemingway's Code, section 4933 et seq.), on the income of each person.

2. TAXATION.  *"Income" defined as gain from capital.*

"Income" is the gain derived from capital, from labor, or from both combined, and income for any given period of time is the amount of gain so derived during the designated period of time.

3. TAXATION.  *Income tax is an "excise tax" and not a property tax within constitutional requirement of taxation in proportion to value.*

An income tax is an excise and not a tax on property within the meaning of the requirement of section 112 of the state Constitution of 1890 that property shall be taxed in proportion to its value and shall be assessed for taxes under general laws and by uniform rules according to its true value.

4. TAXATION.  *New Vol. 18 Key-No. Series—Method of computing a person's income stated.*

The only method provided by chapter 101, Laws of 1912 (Hemingway's Code, section 4933 et seq.), for ascertaining the amount of a person's income is the requirement that he certify the amount thereof to the State Auditor, and the amount of the tax to be collected thereon must be computed on the income disclosed by this certificate.

APPEAL from circuit court of Forrest county.

HON. R. S. HALL, Judge.

Action by Stokes V. Robertson, State Revenue Agent, against the Hattiesburg Grocery Company to recover income taxes. Judgment for plaintiff after appeal from a justice of the peace, and defendant appeals. Affirmed.

*Sullivan & Sullivan* and *Hannah & Cook,* for appellants.

The briefs filed in these cases have dealt at length with the question as to whether the tax here involved is an excise tax, a property tax, an *ad valorem* tax, a personal tax, or a combination of one or more of these. But let us forget for the present all of these theories and look at the result worked out by the application of the act itself.

First: The amount of income after making certain deductions determines the amount of tax.

Second: The tax-payer is not required to make a return. The assessor is required to ask the tax-payer: "Was your income from salaries, fees, trade, profession and property, or any or all of them, for the year ending February 1st, in excess of twenty-five hundred dollars? If the tax-payer answers in the affirmative, then the assessor hands the tax-payer a blank to be filled out, signed and sworn to and the tax-payer is assessed for the amount he puts down. But suppose the assessor fails to make this inquiry of the tax-payer; nothing is required of the tax-payer. But suppose again, that the assessor makes the inquiry and that the tax-payer truthfully answers, no. If the assessor disbelieves this statement, it is his duty to send the name of this tax-payer to the auditor. The auditor, or anyone designated by him, may summons witnesses and adopt such other course as he may see fit to inquire into the income of this tax-payer; if he had an income in excess of twenty-five hundred dollars, he has a right to assess this tax-payer with such amount. The law nowhere requires the auditor, nor the person named by him, to give any notice of any kind or character to this tax-payer.

Third: When the auditor makes this assessment, he reports the same to the tax collector, who proceeds to collect the tax. This assessment by the auditor is a final judgment with no provision for appeal or review.

Fourth: After the assessment, if the tax becomes delinquent, it becomes not merely a lien on the property on which it is levied, but a lien on all the property that the

tax-payer has "and shall be collected as *ad valorem* taxes."

Here we have an honest tax-payer having done everything the law requires of him, who wakes up at taxpaying time with a final judgment rendered against him, constituting a lien on all of his property without ever a word of notice or any opportunity to be heard.

What difference does it make whether the tax imposed by such a statute is an excise tax, a property tax, an *ad valorem* tax, a personal tax, or a combination of one or more of them, for can it be possible that under the guise of any one or more of them that the courts of our country will tolerate such a proceeding as this statute authorizes.

Can it be that all the principles originally promulgated and zealously sustained by the federal and state constitutions, statutes and court decisions for the protection of the citizen against having his property taken for public use without notice and an opportunity for hearing are now to be ruthlessly ignored, simply because this taking of property is under the guise of an income tax.

Most certainly notice and an opportunity for a hearing are as essential to the validity of this statute as to any other. In 26 R. C. L. 345, section 302, it is said: "302. Notice and hearing.—The rule is fundamental that, under the laws for the taxation of property, the person to be affected must have some notice of the proceeding to be had against his property, that in some form he may be heard before any portion of his estate is seized for the support of the government, and that all laws, which permit of the taxation of property without these safeguards are unconstitutional and void. If a statute does not provide for notice in any form, it is not material that as a matter of grace or favor, notice may have in fact been given of the proposed assessment. (And the cases cited in note.)

And on page 347, section 304, it is further said: "304. Kinds of tax to which right to hearing extends.—The right to notice and hearing does not extend to taxes of

every description, but only to such as involve the exercise of a *quasi*-judicial power in the determination of amount. In the case of an excise not dependent upon the valuation of property and in which there is no discretion as to the amount, no notice of the assessment or levy of the tax is necessary, and the same is true in the case of poll taxes, and generally specific taxes on persons and things. But where a tax is levied on property not specifically but according to its value, to be ascertained by assessors appointed for that purpose upon such evidence as they may obtain, a different principle comes in. A tax-payer, even in such a case, is not entitled to notice of the appointment of the assessors in advance of such appointment or an opportunity to protest against or appeal from such appointment. It is, however, well settled that before the amount of the general property tax which any individual taxpayer is bound to pay is conclusively determined, he must be given notice in order that he may have an opportunity to show that he is not liable for the tax or that the amount assessed against him is too great and similar when the amount of an excise is dependent upon the value, of the property in connection with the use of which the excise is imposed, the person assessed is entitled to notice and a hearing with respect to the valuation of the property before the amount of the excise is finally determined." (And cases cited in note.)

And even Mr. Black, so strongly relied on by counsel for appellee, in his fourth edition in section 9, recognizes the necessity of notice and a hearing before the assessment of such a tax, for he says: "It is enough if he is informed of the amount for which he is to be charged, and is afforded an opportunity to contest the legality of the tax, the question of his liability to it, or the amount of the assessment, before some board or tribunal empowered to give him all the relief which justice demand, though it be a board of administrative officers in the first instances, with a final appeal to the courts. As this method of procedure has commonly been prescribed by the income tax

laws, their validity has been upheld as against the contention that they deprived the citizen of his property without due process of law."

But counsel for appellee, although admitting that the tax is to be imposed on net income, earnestly argue that no assessment is necessary, that there is nothing to value. and that, therefore no notice is required. We think the fallacy of this argument has already been shown. But one or two more illustrations: Suppose that "B" bought a plantation twenty-five year ago, for which he paid ten thousand dollars, and that he cleared the land, put it in cultivation, built houses, barns, etc.; and that last year what was "B's" income? Was it the fifty thousand dollars, minus the cost of this property, and in counting the cost of clearing, putting into cultivation, tenant houses, barns, etc.? And again, are you going to take into account depreciation, taxes, carrying charges, etc.? Does all this involve the application of one's judgment? We respectfully submit that the valuation of lands, houses, horses, cows, etc., the ordinary valuation that assessors are required to make is nothing as compared to this. And again, suppose a lawyer gets a tract of land as a contingent commission? Is any valuation necessary for the determination of the amount of his income?

But counsel for appellee say that the statute under consideration gives the tax-payer ample notice, because the assessor calls on the tax-payer and gives him an opportunity to make his assessment. Perhaps this argument is sound, although we do not concede it, as to the man who has an income and fails to report it. But let's go back to the case of Mr. "B" again. "B's" plantation cost him ten thousand dollars when he bought it. He has cleared the land, put it in cultivation, built houses, barns, etc. Suppose this cost him forty thousand dollars. "B" has sold the place for fifty thousand. The property cost "B" as much as he sold it for. Can it be said that "B" had any income? He had no profit. This question can't be open to argument. Then in response to the assessor's inquiry as

to whether or not he had an income in excess of twenty-five hundred dollars, "B" correctly answers, no. "B" is therefore not required to do anything else. But the as-sessor, knowing of this fifty thousand dollar sale, but noth-ing of the cost of the property, suspects "B" of having an income subject to taxation and therefore sends "B's" name to the state auditor. The auditor makes such inquiry, and at such time and place, as he, or anyone whom he may ap- point, sees fit, suppose the auditor examines the deed rec-ords and finds that "B" paid ten thousand dollars for this property and sold it for fifty thousand, and thereupon as-sesses "B" with an income of forty thousand dollars. If "B" does not pay this tax, the assessment becomes a lien on all of his property, real and personal. The law does not require the auditor to give "B" any kind of notice of a hearing and does not provide for any appeal or review. In other words the finding of the auditor is final.

In one of the briefs for appellee, it is innocently but er-roneously stated that this act provides for a hearing, but council seems to have confused the hearing of witnesses with the idea that it is to be a hearing for the taxpayer. The only hearing provided for by this act is a hearing of witnesses; and they may be heard at any time or place fixed by the auditor.

Result: A final judgment that constitutes a general lien on all of the property of the taxpayer rendered by a ministerial officer, without a word of notice to the person whose property is affected.

But learned counsel for appellee say, let the tax-payer enjoin the collection of this erroneous assessment.

In the first place, why should this honest tax-payer, who has done everything the law requires of him, be called up-on to go to this annoyance and expense? He is guilty of no wrongdoing. But in the second place, what good would it do to enjoin the collection of this tax? The power to make the inquiry and ascertain the amount of income is vested in the auditor. If this is a valid pro-vision, then the auditor's finding is binding, final and con-

clusive and the injunction would avail nothing. If the auditor's finding is not final and conclusive, then the law is invalid and his assessment is void.

We can conceive of no better incubator for the hatching of Bolshevism than a law that permits a ministerial officer to render a general, final judgment that becomes a lien on all of the property tax-payer owns without providing for notice and a hearing.

*Wells, Stevens & Jones,* for appellee.

The only question before the court is the constitutionality of our state statute. The presumption is in favor of the validity of the law, and before the statute can be written out of the code by the judgment of the court it must appear beyond all reasonable doubt that the statute cannot be made to square with our organic law. *Dwight* v. *Richardson,* 12 S. & M. 325; *Beck* v. *Allen,* 58 Miss. 143; *Burnham* v. *Sumner,* 50 Miss. 517; *Virden* v. *Bowers,* 55 Miss. 1; *Johnston* v. *Reeves & Company,* 112 Miss. 227; *Lumber Company* v. *Pearce,* 106 Miss. 672; *Martin* v. *The Lessee of Waddell,* 16 Peters, 410-416; Bryce; The American Commonwealth, 243; Constitutional Limitations (3 Ed.), par. 515.

An income tax is not a direct property tax and is not altogether a tax on the person, but partakes of the nature of both. It is not an *ad valorem* tax but is *sui generis.* Homess Federal Taxes, 1920 Ed; Black on Income Taxes (3 Ed.), par. 36; *State ex rel. Manitowoc Gas Co.* v. *Wis. Tax Comm.,* 161 Wis. 111, 152 N. W. 848; *State ex rel. Bundy* v. *Nuggard,* 163 Wis. 307, 158 N. W. 87.

An *ad valorem* tax as its name indicates, necessarily is based on assessment and valuation. The assessment of property has been defined to be the listing and valuation for taxation purposes. There must be a listing of each separate article and a true value placed on each article. An income tax, on the other hand, has no relation to value. *Savannah* v. *Hartridge,* 8 Ga. 23; *Waring* v. *Savannah,* 60

Ga. 93;*Glasgow* v. *Rowse,* 43 Mo. 43; *State ex rel. Bolens* v. *Frear* (Wis.), 134 N. W. 573, L. R. A. 1915 B. 569.

Something has been said about *Pollock* v. *Farmers Loan & Trust Company* (U. S.), 39 Law. Ed. 1108, as authority for the proposition that an income tax is a direct tax on property, and therefore unconstitutional. The court well knows the history of our Federal Income Tax law and the celebrated opinion by a Bench divided five to four, holding the Federal Income Tax law of 1894 unconstitutional. The decision only went to the extent of holding that income taxes imposed on the rents or income of real estate are direct taxes, and being direct within the meaning of the constitution, must be appointed according to population between the several states. Congress originally levied an income tax in 1861, when struggling under the burden of providing revenue for the Civil War. The decision in the Pollock case did hold that Congress was without power to tax incomes. The only question was one presented by the Federal Constitution, whether the tax must not be apportioned. The Sixteenth Amendment was brought about by the decision in the Pollock case, and the primary object of the Sixteenth Amendment was not to confer the power upon Congress to levy an income tax, and does not in fact enlarge the power of taxation then possessed by Congress, but does take away the necessity of apportionment. This object of the Sixteenth Amendment is made clear by the very lengthy and elaborate opinion of Chief Justice WHITE, in *Brusharber* v. *Union Pacific Railroad Company,* 60 Law Edition, 492.

In *Purnell* v. *Page* (N. C.), 45 S. E. 534, the court had under consideration the power of the state to impose an income tax upon the salary of a federal judge, and in considering this main point made the following observations that are here pertinent.

But the tax levied on income is not a property tax but is a percentage laid on the amount which a man receives, irrespective of whether he spends it, wastes it, or invests it.

In *State* v. *Johnson* (Wis.), 175 N. W. 589, the court sustained a special tax to pay soldiers bonus, and in carry· ing out and giving effect to the statute there was a tax on incomes. *Alderman* v. *Wells,* (S. C.), 67 S. E. 718, 27 L. R. A. (N. S.) 864.

We respectfully submit, therefore, that an income tax is not a property tax in the sense in which that term is usually employed, and especially in the sense in which it is employed in our state constitution. The statute under review is not obnoxious to any of the provisions of section 112 of our constitution. It is a cardinal rule of construction that any section of ₐa written constitution should be construed in the light of the times in which it was adopted. *Clarksdale Insurance Agency* v. *Cole,* 87 Miss. 637, 40 So. 228.

The court thereupon differentiates the Coca-Cola case from *Rodge* v. *Kelly,* 88 Miss. 209, and *Heyland* v. *Sharp,* 88 Miss. 567, cases in which there was not a reasonable classification.

And in the older cases of *Alcorn* v. *Hamar,* 38 Miss. 652; *Daly* v. *Swope,* 47 Miss. 367; *Vassar* v. *George,* 47 Miss. 713; *Edwards House Company* v. *Jackson,* 91 Miss. 429, 45 So. 14, our court expressly ruled that section 112 had no reference · to local and special assessments. These combined cases show conclusively two things: first, that section 112 was intended to lay down a rule for the assessment and collection of *ad valorem* taxes and none other; secondly, the uniformity and equality clause has no reference to privilege taxes or any taxes except *ad valorem* taxes. This is made plain by numerous decisions of this court defining equality and uniformity and making clear that it has reference both to the rate and to the valuation. *Thibodeau et ux* v. *The State,* 69 Miss.· 683.

But the question we are now discussing has been expressly decided by other courts of the union. In *State* v. *Johnson* (Wis.), 175 N. W. 589, headnote 14 reads: "While the uniformity clause of the constitution applies to property tax, it has no application to income tax." The

constitutionality of a state income tax law was under attack in *Alderman* v. *Wells* (S. C.), 67 S. E. 781, 27 L. R. A. N. S. 864; *Commonwealth* v. *Werth* (Va.), 82 S. E. 695; *State ex rel. Bolens* v. *Frear, supra,* in L. R. A. 1915B., page 569, 27 Cyc., p. 759, section 6; *Express Co.* v. *City of St. Joseph,* 66 Mo. 675, 27 Am. Rep. 382, which was a case of the taxation of the gross receipts of an express company; *Kansas City* v. *Whipple,* 136 Mo. 1. c., 478, 38 S. W. 295, 35 L. R. A. 747, 58 Am. St. Rep. 657; *City of St. Louis* v. *Sternberg,* 69 Mo. 1. c., 301; and *City of Aurora* v. *McGannon,* 138 Mo. 38, 39 S. W. 469, license and occupation taxes; *City of St. Louis* v. *McCann,* 157 Mo. 301, 57 S. W. 1016, real estate agents; and *City of Richmond* v. *Creel,* 253 Mo. 1. c. 257, 161 S. W. 794; *St. Louis* v. *United Rys. Co.,* 263 Mo. 1. c. 449, 174 S. W. 78; *Jenkins* v. *Ewing,* 8 Heisk. (Tenn.) 456, 12 Corpus Juris, 706, and cases cited under note 10; *Saunders* v. *Anchor Line,* 97 Mo. 1. c. 30, 31, 10 S. W. 595, 3 L. R. A. 390; Ex Parte Durbin, 102 Mo. 1. c. 103, 14 S. W. 821; *Michigan Central R. R. Co.* v. *Powers,* 201, U. S. 245, 26 Sup. Ct. 459, 50 L. Ed. 744; *Bells Gap R. R.* v. *Pennsylvania,* 134 U. S. 233, 10 Sup. Ct. 533, 33 L. Ed. 892; *Davidson* v. *New Orleans,* 96 U. S. 97, 24 L. Ed. 616; *State ex rel. Bolens* v. *Frear,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B. 569, 606 Ann. Cas. 1913A 1147; *Alderman* v. *Wells,* 85 S. C. 507, 67 S. E. 781, 27 L. R. A. (N. S.) 864, 21 Ann. Cas. 1913; 205 S. W. 195.

There can be no federal question in this case. Our law is in no wise obnoxious to any of the provisions of the Federal Constitution. *Shaffer* v. *Carter* (U. S.), 64 L. Ed.; *Michigan C. R. R. Co.* v. *Powers,* 201 U. S. 245, 50 L. Ed. 744, 26 Sup. Ct. Rep. 459, pp. 292, 293, State Tax on Foreign Held Bonds, 15 Wall, 300, 319, 21 L. Ed. 179, 186, 23 L. Ed. 347, 348; *Armour & Co.* v. *Virginia,* 246 U. S. 1, 6, 62 L. Ed. 547, 550, 38 Sup. Ct. Rep. 267; *American Mfg. Co.* v. *St. Louis,* 250 U. S. 459, 463, 63 L. Ed. 1084, 1087, 39 Sup. Ct. Rep. 522; *New Orleans* v. *Stempel,* 175 U.

S. 309, 320, et seq. 44 L. Ed. 174, 180, 20 Sup. Ct. Rep. 1101; *Bristol* v. *Washington County,* 177 U. S. 133, 145, 44 L. Ed. 701, 707, 20 Sup. Ct. Rep. 585; *Liverpool & L. & G. Ins. Co.* v. *Board of Assessors,* 221 U. S. 346, 354, 55 L. E. 762, 767, L. R. A. 1915C, 903, 31 Sup. Ct. Rep. 550, and sustaining federal taxation of the income of an alien nonresident derived from securities held in this country; *De Ganay* v. *Lederer,* 250 U. S. 376, 63 L. Ed. 1042, 39 Sup. Ct. Rep. 524.

The following additional authorities are conclusive on these points: Kentucky R. Tax cases, 29 L. Ed. 414; *Davidson* v. *New Orleans,* 24 L. Ed. 616; *McMillan* v. *Anderson,* 24 L. Ed. 335; *Bell's Gap R. Co.* v. *Pennsylvania,* 33 L. Ed. 892.

Alleged want of notice and opportunity to be heard. In the collection of income and privilege taxes it is a sufficient compliance with due process if the tax-payer at some state of the proceeding has notice and an opportunity to be heard or to contest the validity of the tax. *McMillan* v. *Anderson,* 95 U. S. 37, par. 246; Matter of Meadow, 1 Abb. (U. S.) 317, 325 Fed. Cas. No. 9375. In par. 342, Mr. JUDSON says: "Where the valuation is fixed by the tax-payer himself, a hearing is not required."

"As the bank itself fixed the market value (of shares) and the statute the amount of the tax, the assessor's duty was a mere ministerial one and therefore the case was within the principle declared by the supreme court in *Hagar* v. *Reclamation District,* 28 L. Ed. 569."

We respectfully submit that under our state income tax law there is nothing to value. *Lott* v. *Hubbard,* 44 Ala. 593.

We respectfully submit that a taxpayer will in all events have his day in court. If he fails to give in his income tax and the auditor assesses him upon such information as is available he can refuse to pay the tax and force the state to sue and if a suit is filed the tax-payer has his day in court. If the tax is illegal he can pay it under protest, or maintain an injunction. As stated in

*Purnell* v. *Page* (N. C.), 45 S. E. 535: "As to the other point . . . whether the plaintiff can maintain an injunction against the sale of his property under an illegal tax or must pay the tax under the protest, and sue to recover it back, it is equally well settled that he can pursue either remedy." Section 181 of our state constitution has no bearing on this case. The statute embraces corporations. Our statute on definitions expressly provides that the word "person" when used in any statute, "shall apply to artificial as well as natural persons."

We submit that if there is any rule of construction applicable at all on the point it is that the law looks with disfavor upon exemptions, and if we are to have a general income tax law, corporations have no right to be exempt, and their claims to exemption must be strictly construed. *Vicksburg* v. *Vicksburg Sanitarium,* 117 Miss. 709, 78 So. 702; *New Standard Club v. McRaven,* 111 Miss. 92 71 So. 289, Ann. Cas. 1918E, 274; *R. R. Co.* v. *Adams,* 77 Miss. 194; *Currie-Finch Brick & Lumber Co.* v. *Miller, Auditor,* —Miss.—, 86 So. 579, Adv. Sheets, So. Rep. January fifteenth.

We submit, also, that no inference can be drawn that the word "person" embraces only individuals, from the mere fact that the law makes it the duty of the assessor to call upon all persons for their income tax returns when he assesses the real and personal property of his county. The law does not stipulate that he is to assess persons with income the same as, or just like he assesses the same persons with real or personal property. We submit that the legislature could place this administrative duty upon some person other than the assessor. We call the court's attention particularly to the fact that Hattiesburg Grocery Company is a private corporation organized for pecuniary gain, and is chartered under the laws of Mississippi. We are not here concerned with the application of the law to public service corporations. This suggests another point in this case which we desire to emphasize.

Appellants cannot raise the question as to whether the statute applies to any except private individuals, and domestic corporations organized for pecuniary gain.

The rule is well settled that no one can plead the unconstitutionality of a statute, except one who is to be affected or damaged by some of its alleged obnoxious provisions. 6 R. C. L., pp. 89-90; *M. & C. R. Co.* v. *The State,* 110 Miss. 290, 70 So. 355; *Standard Stock Food Co.* v. *Wright* (U S.), 56 L. Ed. 1197, and referred also to *Sou. R. R. Co.* v. *King* (U. S.), 54 L. Ed. 868; *Plymouth Coal Co.* v. *Penn.* (U. S.), 58 L. Ed. 713. We respectfully submit, therefore, that the rule is well settled in this court and in the supreme court of the United States, and elsewhere, that appellants cannot question the constitutionality of the present law because of any alleged point that might be raised by a public service corporation or a nonresident corporation. If the law is valid as against private persons and domestic corporations, it is not only the privilege but the duty of the court to uphold the law as to these classes and reserve any decisions as to the application of the law to other kinds of corporations.

Much ado is made by counsel over the recent Grimes case, wherein the supreme court of Alabama condemns the Alabama income tax law. We believe this is the only case by a state court striking down an income tax law. Over against it are many decisions upholding such a law.

We respectfully submit, in this connection, that while many of the constitutions of the states expressly authorize an income tax, the same constitutions have provisions for uniformity and equality similar to the provisions in our Mississippi constitution. We believe that North Carolina, South Carolina, Wisconsin, Virginia, Massachusetts, and Oklahoma have constitutions which authorize an income tax. On the contrary, Georgia and Missouri have no such provisions and both of these states have upheld their income tax law.

In addition to the authorities which we have cited that section 112 has reference only to *ad valorem* taxation,

we refer the court also to *State* v. *Lawrence*, 108 Miss. 291; upholding the tax on motor vehicles.

Before closing, we desire to point the court to the difference between the case at bar and certain Mississippi cases so much relied upon.

The Kreutzer case and the McLeod case are not controlling. Both of the statutes there condemned imposed a property tax in the guise and form of a privilege tax, and that, too, without any reasonable classification. The court held in these cases that the tax was not a privilege tax, but an additional *ad valorem* tax in a different form. The gist of these decisions was, that the legislature is without power to impose any privilege tax that would deny to the owner his constitutional right to ply his own trade or lay hold upon his own property. The court held also that the acreage tax there imposed was directly upon property, and the turpentine tax there imposed was directly upon the boxes of turpentine. In the Kreutzer case, our court by the Present Chief Justice, said:

"No tax can be imposed on the right of ownership which is not also a tax on property." And, the tax here in question is on property, and not being in proportion to its value violates section 112 of the constitution, and is void. "The Kreutzer case did not at all involve an income tax, but a tax imposing twenty cents per acre, for the privilege of buying, owning, or holding more than one thousand acres of timber land or lands in this state." The present income tax does not undertake to levy a tax on the right of ownership. The party owing an income tax may or may not own property. His ownership or property is a mere incident. The person is taxed so much upon his annual gain for the support of the government which gives him protection. In the *McLeod case,* 112 Miss. 383, the statute imposes one-fourth of one cent each year for each cut or box, and was in the view of this court a tax not on the business, but on the property involved. It may be that the judge who wrote the opinion in the McLeod case was guilty of taking in too much territory in his reasoning. or

argument. We have a suspicion that judges sometimes do this. But we have read afresh the opinion in the McLeod case, and are thoroughly convinced that it is a splendid opinion but has no application to the case at bar.

Counsel also herald the case of *Bouslog, et al.* v. *City of Gulfport,* 112 Miss. 184, 72 So. 896, as "a very able," opinion. The writer is willing to accept this estimate of the opinion and the soundness of the views therein discussed as to due process of law. The point of differentiation is simply that the Bouslog case presents a local improvement, and under the statutory scheme the landowner was being assessed with benefits to his property without being given an opportunity to be present at the hearing. There was no time fixed either by law or by actual notice, or by publication, for the local tribunal to meet and hear from parties interested. The benefits could not be estimated or assessed without considering various elements depending upon the judgment of witnesses and the ultimate decision of a board sitting as a judicial tribunal, Income taxes, on the contrary, do not depend upon valuations of property, and taxes of this kind do not have to be passed on by any judicial tribunal whatever.

The case of *Chicago R. I. & P. R. Co.* v. *Robertson,* 84 So. 449, is not in point. The decision in that case is bottomed upon the holding and proposition that the legislature cannot provide for a property tax in lieu of an *ad valorem* tax. The court held that chapter 113, laws of 1912, providing for a tax on the gross receipts of a freight line company, was in fact a property tax, and must be levied according to value. The chapter under review did not undertake to impose an income tax, and the court, in its opinion expressly stated: "We are not here concerned with the power *vel non* of the legislature to exempt property from taxation, or to impose privilege and income taxes." Under the decision in this case there can be no property tax in lieu of or in substitution for an *ad valorem* tax. That is the full extent to which this decision goes.

Conclusion. We do not take issue with the fact that our income statute is loosely drawn, and that some of its administrative features are involved in doubt.

The law should be amended in certain particulars, and a penalty provided for delinquents. But, notwithstanding any minor imperfections, we see no reason why the court should not uphold its constitutionality. We hope that the court can reach the same happy conclusion commented upon by the supreme court of Missouri, when, in upholding their law, the court said:

"The conclusion reached in this case is fraught with the greatest significance and import to the people of the state, whose representatives in the enactment in question, achieved a marked advancement in the improvements of the fiscal policy."

And again, "that we have been able to reach this result compatibly with the restraints of the Constitution, is a matter of profound satisfaction."

An income tax is essentialy a tax based upon ability to pay, and thereby is justly distributed. It is a just tax. The tax is as old as government itself. It has been imposed by every civilized country, and is now in force in a large number of the states of the union.

SMITH, C. J., delivered the opinion of the court.

This suit was begun by the appellee in the court of a justice of the peace to recover from the appellant, a corporation, income taxes alleged to be due by it to the state for the years 1914, 1915, 1916, 1917, 1918, 1919. The statement of the cause of action set forth that the appellant had failed to report its income to the assessor for taxation, or to pay the tax thereon, and that the amount of the tax due by it each year was sixteen dollars, ninety-one and two-thirds cents, making a total of one hundred one dollars and fifty cents. The cause was tried upon an agreement in writing that the appellant owes the state an income tax for the years set forth in the appellee's statement of the cause of action aggregating the amount sued for, provided the statute under which the tax is sought to be collected covers corporations and is valid. The cause reached the

court below on appeal from the justice of the peace and judgment was there rendered in favor of the appellee.

Chapter 101, Laws of 1912 (Hemingway's Code, sections 4933 to 4942, inclusive), under which the tax here in question is sought to be collected, imposes a tax on all incomes with certain exceptions in excess of two thousand, five hundred dollars.

The contentions of counsel for the appellant are that: First, the statute does not impose a tax on corporations; and, second, the statute is void for the reason that it violates sections 112 and 135 of the state Constitution and the due process clause of both the state and federal Constitutions.

First.    The tax is imposed "on all annual incomes in excess of two thousand, five hundred dollars," with no exception in favor of corporations. "Each person" is required to certify to the State Auditor the amount of his income for the previous year in excess of two thousand, five hundred dollars, and section 1590, Code of 1906 (section 1357, Hemingway's Code), provides that the term "person," when used in any statute, shall apply to artificial as well as natural persons.    There is no merit therefore in the contention that the statute does not impose a tax on the income of corporations.

Second.    Section 112 of the state Constitution provides that property shall be taxed in proportion to its value and shall be assessed for taxes under general laws and by uniform rules according to its true value, and the contention that the statute is in conflict with that section is based on the assumption:    First, that a tax on income is a tax on specific property, from the value of which the income tax must be computed; and, second, that a tax on income derived from property is a tax on the property from which the income was derived.

"Taxes fall naturally into three classes, namely, capitation or poll taxes, taxes on property, and excises. Capitation or poll taxes are taxes of a fixed amount upon all the persons, or upon all the persons of a certain class, resi-

dent within a specified territory, without regard to their property or the occupation in which they may be engaged. Taxes on property are taxes assessed on all property or on all property of a certain class located within a certain territory on a specified date in proportion to its value, or in accordance with some other reasonable method of apportionment, the obligation to pay which is absolute and unavoidable and is not based upon any voluntary action of the person assessed. A property tax is ordinarily measured by the amount of property owned by the taxpayer on a given day, and not on the total amount owned by him during the year, and it is ordinarily assessed at stated periods determined in advance, and collected at appointed times. . . . Excises, in their original sense, were something cut off from the price paid on a sale of goods, as a contribution to the support of government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation." 26 R. C. L., p. 34.

"Income" is "the gain derived from capital, from labor, or from both combined." *Stratton* v. *Howbert,* 231 U. S. 399, 34 Sup. Ct. 136, 58 L. Ed. 285, and income for any given period of time is the amount of the gain so derived during the designated period of time. Or, to express it differently:

"All incomes, apart from pensions or certain other fixed allowances, are payments to the owners of some requisite of production in respect of the services rendered by that requisite to the actual production of wealth. Or, put in another way, the monetary value of all goods or services that are produced and sold, after provision has been made for the maintenance and repair of plant, materials, and other elements of the capital fabric, is distributed in various proportions as income to the capitalist, workers, land-

owners, business men, professional men, whose personal activities or property help to produce this wealth. The wealth itself is real income; the price of it, broken up into various payments to owners of the factors of production, is money income." Hobson's Taxation in the New State, p. 13.

Whether income is received in the form of money or other property, the property so received is taxable as such and if in existence on the 1st day of February is taxed under the general revenue laws. But a tax on income to be paid by the recipient thereof without reference to whether he has invested, spent, or wasted it, as is the tax here in question, is not on the specific property from which the income was received irrespective of the person of the recipient, neither is a tax on the person irrespective of property; for no definition of income can be framed under which it can be dissociated from the activities of the person who produced or received it, so that a tax on income necessarily includes among its elements the production or receipt of property. (*State* v. *Wisconsin Tax Commission,* 166 Wis. 287, 163 N. W. 639, 165 N. W. 470), and to that extent is a tax on the performance of an act resulting in gain to the person performing it, and the rule is, and was when section 112 of the state Constitution was adopted, that when the tax is imposed on the performance of an act, it will not be classified as a tax on property, although it is proportioned in amounts to the value of the property used in connection with or produced by the act which is taxed.

Income is necessarily the product of the joint efforts of the state and the recipient of the income, the state furnishing the protection necessary to enable the recipient to produce, receive, and enjoy it, and a tax thereon in the last analysis is simply a portion cut from the income and appropriated by the state as its share thereof, and, while a tax on income includes some of the elements both of a tax on property and of a tax on persons, it cannot be classified as strictly a tax on either, for it is generically and necessarily an excise, and should be enforced as such unless

and until so to do would accomplish the result which section 112 of the Constitution was adopted to prevent, which is to prevent discrimination in the taxation of property, so that all property shall bear its due proportion of the burdens of government. *Adams* v. *Miss. State Bank,* 75 Miss. 701, 23 So. 395; *Adams* v. *Bank of Oxford,* 78 Miss. 532, 29 So. 402; *Chicago, etc., R. Co.* v. *Robertson,* 122 Miss. 417, 84 So. 449. The section contains no language even remotely indicating that its purpose is to withdraw from the legislature the power to tax any species of property or any of the activities of persons who enjoy the protection of the state's laws, but such would be its effect if a tax on the income derived from property should be held to be necessarily a tax on the property from which the income was derived; for it would then necessarily follow that a tax on specific property derived as gain from other property, on the value of which income must be computed, would also be a tax on the property from which it was derived. So that the property derived as gain from other property would be exempt from taxation until the form thereof is so changed that it can no longer be classified as property derived as gain from other property. Such a result is manifestly not within the purpose of the section, and we do not understand counsel for the appellant to so contend.

This was the theory on which the case of *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759, and 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108, was decided, for, as pointed out in *Brushaber* v. *Union P. R. Co.,* 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414:

"The conlusion reached in the Pollock Case did not in any degree involve holding that income taxes generically and necessarily came within the class of direct taxes on property, but, on the contrary, recognized the fact that taxation on income was in its nature an excise entitled to be enforced as such unless and until it was concluded that to enforce it would amount to accomplishing the result which the requirement as to apportionment of direct taxation was

adopted to prevent, in which case the duty would arise to disregard form and consider substance alone, and hence subject the tax to the regulation as to apportionment which otherwise as an excise would not apply to it. Nothing could serve to make this clearer than to recall that in the Pollock Case, in so far as the law taxed incomes from other classes of property than real estate and invested personal property, that is, income from 'professions, trades, employments, or vocations,' . . . its validity was recognized; indeed, it was expressly declared that no dispute was made upon that subject, and attention was called to the fact that taxes on such income had been sustained as excise taxes in the past."

The case of *Railroad* v. *Robertson,* 122 Miss. 417, 84 So. 449, is not only not in conflict, but, on the contrary, is in accord herewith. The tax there under consideration was on specific property not to be otherwise taxed, and the rate of taxation was not only different from that imposed on other property, but the amount of the tax was to be computed, not on the value of the property taxed, but the income derived herefrom. To have held such a tax not to be on property would have been not only to disregard the express purpose of the statute, but to permit that to be done which section 112 of the Constitution was adopted to prevent. The power of the legislature to impose an income tax was in no way involved in the decision of that case, as the court in its opinion was careful to point out.

The error in the cases cited by counsel for the appellant holding that an income tax must be classified as a tax on property results from dissociating gains derived from capital, or from labor, or from both, wholly from the activities relative thereto of the person taxed, and looking alone to the specific property which constitutes the gain so derived. In one of these cases, *Eliasberg* v. *Grimes* (Ala.), 86 So. 56, the court summarized its reasons for holding an income tax to be a tax on property as follows:

"Money or any other thing of value, acquired as gain or profit from capital or labor, is property; in the aggregate

these acquisitions constitute income; and, in accordance with the axiom that the whole includes all of its parts, income includes property and nothing but property, and therefore is itself property."

The privilege tax cases of *Thompson* v. *Kreutzer,* 112 Miss. 165, 72 So. 891; *Thompson* v. *McLeod,* 112 Miss. 383, 73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674, and *Dawson* v. *Kentucky Distillery & Warehouse Co.,* 254 U. S. —, 41 Sup. Ct. 272, 65 L. Ed. —, are not in conflict herewith. In the first the tax was not on the acquisition of property, but was on the right to own property to be paid annually as long as the person taxed should continue to own it, without reference to the use to which he might put it. In the second the tax as construed by the court was on the right to use and enjoy property without reference to whether or not the owner derived a revenue or gain therefrom. In the third the tax was upon all whisky withdrawn from bond or transferred in bond from Kentucky to a point outside that state, and, as set forth in the court's opinion:

"The thing really taxed is the act of the owner in taking his property out of storage into his own possession (absolute or qualified), for the purpose of making some one of the only uses of which it is capable; i. e., consumption, sale, or keeping for future consumption or sale. . . . The whole value of the whisky depends upon the owner's right to get it from the place where the law has compelled him to put it, and to tax the right is to tax the value."

The views hereinbefore expressed are supported by 26 R. C. L., pp. 35 and 141 et seq.; *Brushaber* v. *Union P. R. Co.,* 240 U. S. 1, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414; *Glasgow* v. *Rowse,* 43 Mo. 479; *Ludlow* v. *Wollbrinck,* 275 Mo. 339, 205 S. W. 196; *Waring* v. *Savannah,* 60 Ga. 93; *Purnell* v. *Page,* 133 N. C. 125, 45 S. E. 534; *State* v. *Philadelphia, etc., R. Co.,* 45 Md. 361, 24 Am. Rep. 511.

Third. Section 135 of the State Constitution creates the office of county tax assessor, and the contention that the statute violates that section is based on the assumption

that, when a person has an income in excess of two thousand, five hundred dollars and fails to report it, the Auditor is charged with the duty of ascertaining its amount and assessing it for taxation, thereby discharging a duty which under the Constitution should be discharged by the county tax assessor, and the contention that it also violates the due process clause of the state and federal Constitution is based on the further assumption that in making this assessment the Auditor proceeds without notice to the person from whom the tax is to be collected. The statute imposes no such duty on the Auditor; consequently we are not called on to determine whether or not the legislature has the power to impose such duty on him. The duties imposed on the Auditor are to certify to the tax collector the amount of tax due on the income reported to him by each person, and to coerce, in some way not clearly pointed out, persons who have failed to give in their income for taxation, into so doing.

The only method provided by the statute for ascertaining a person's income is for a return thereof to be made to the auditor under oath by the person himself either voluntarily or under compulsion, and it is on this return alone that the amount of the tax due on his income by the person who made the return is to be computed.

The appellant, as hereinbefore stated, did not report his income to the Assessor for taxation as required by the statute, but no objection to a recovery by the appellee on that ground is here made by counsel for the appellant, and all such objections, we presume, were intended to be waived by the agreement on which the cause was tried in the court below.

*Affirmed.*